

```
 1            IN THE UNITED STATES DISTRICT COURT
          FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
 2
                  CASE NO.  1:10-CV-681
 3
                                    )
 4   ALLERGAN, INC. AND DUKE        )
     UNIVERSITY,                    )
 5                  Plaintiffs,     )
                                    )
 6            -vs-                  )
                                    )
 7   APOTEX, INC. AND APOTEX        )
     CORP.,                         )
 8                  Defendants.     )
                                    )
 9
                  CASE NO.  1:11-CV-298
10
     ALLERGAN, INC. and DUKE        )
11   UNIVERSITY,                    )
                    Plaintiffs,     )
12                                  )
                -vs-                )
13                                  )
     SANDOZ, INC.,                  )
14                  Defendant.      )

15                CASE NO.  1:11-CV-650

16   ALLERGAN, INC. and DUKE        )
     UNIVERSITY,                    )
17                  Plaintiffs,     )
                                    )
18            -vs-                  )
                                    )
19   HI-TECH PHARMACAL CO., INC.,   )
                    Defendant.      )
20   ----------------------------------

21

22

23            FINAL PRETRIAL CONFERENCE

24     BEFORE THE HONORABLE CATHERINE C. EAGLES

25
```

FILED
OCT 16 2012
IN THIS OFFICE
Clerk U. S. District Court
Greensboro, N. C.
By

ORIGINAL

**Page 2**

```
 1              United States District Court
                     324 West Market Street
 2                       Courtroom 3
                   Greensboro, North Carolina
 3

 4              Thursday, October 11th, 2012

 5

 6              9:00 a.m. to 11:05 a.m.

 7

 8

 9

10   REPORTED BY:       Beverly J. Gramm, RPR
                        Notary Public
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**Page 3**

```
 1   APPEARANCES OF COUNSEL:

 2        On Behalf of the Plaintiffs:

 3           LARRY McDEVITT, ESQ.
                  - and -
 4           HEATHER WHITAKER GOLDSTEIN, ESQ.
             The Van Winkle Law Firm
 5           11 North Market Street - Suite 300
             Asheville, NC   28801
 6           (828) 258-2991
             lmcdevitt@vwlawfirm.com
 7           hgoldstein@vwlawfirm.com

 8
             JONATHAN E. SINGER, ESQ.
 9           Fish & Richardson, P.C.
             60 South Sixth Street - Suite 3200
10           Minneapolis, MN   55402
             (612) 335-5070
11           singer@fr.com

12
             ELIZABETH M. FLANAGAN, ESQ.
13                - and -
             DOUGLAS E. McCANN, ESQ.
14           Fish & Richardson, P.C.
             222 Delaware Avenue - 17th Floor
15           P.O. Box 1114
             Wilmington, DE   19899
16           (302) 652-5070
             eflanagan@fr.com
17           dmccann@fr.com

18
             JEFFREY T. THOMAS, ESQ.
19           Gibson, Dunn & Crutcher, LLP
             3161 Michelson Drive
20           Irvine, CA   92612
             (949) 451-3800
21           jtthomas@gibsondunn.com

22

23

24

25
```

**Page 4**

```
 1   APPEARANCE OF COUNSEL:  (cont'd)

 2        On Behalf of Defendant Apotex, Inc.
          and Apotex, Corp.:
 3
             ANDREW M. ALUL, ESQ.
 4                - and -
             PAUL J. MOLINO, ESQ.
 5           Rakoczy, Molino, Mazzochi, Siwik, LLP
             6 West Hubbard Street - Suite 500
 6           Chicago, IL   60654
             (312) 527-2157
 7           aalul@rmmslegal.com
             paul@rmmslegal.com
 8

 9           DARRELL A. FRUTH, ESQ.
             Brooks, Pierce, McLendon,
10           Humphrey & Leonard, LLP
             2000 Renaissance Plaza
11           230 North Elm Street
             Greensboro, NC   27401
12           (336) 373-8850
             dfruth@brookspierce.com
13

14        On Behalf of Defendant Sandoz, Inc.:

15           TOM PILARSKI, ESQ.
                  - and -
16           BRANDON C. HELMS, ESQ.
             Steptoe & Johnson, LLP
17           115 South LaSalle Street - Suite 3100
             Chicago, IL   60603
18           (312) 577-1251
             tpilarski@steptoe.com
19           bhelms@steptoe.com

20
             F. HILL ALLEN, ESQ.
21           Tharrington Smith, LLP
             209 Fayetteville Street Mall
22           P.O. Box 1151
             Raleigh, NC   27602
23           (919) 821-4711
             hallen@tsmithlaw.com
24

25
```

**Page 5**

```
 1   APPEARANCES OF COUNSEL:   (cont'd)

 2
          On Behalf of Defendant Hi-Tech
 3        Pharmacal Co., Inc.:

 4           STEVEN B. FOX, ESQ.
                  - and -
 5           LYN K. BROOM, ESQ.
             Teague, Rotenstreich, Stanaland,
 6           Fox & Holt, PLLC
             101 South Elm Street - Suite 350
 7           Greensboro, NC   27401
             (336) 272-4810
 8           sbf@trslaw.com
             lkb@trslaw.com
 9

10

11

12   ALSO PRESENT:

13   Marlene Sanders
     In-Court Clerk
14

15

16

17

18

19

20

21

22

23

24

25
```

Page 6

1    THE COURT:  Good morning.
2    THE AUDIENCE:  Good morning, Your Honor.
3    THE COURT:  I asked the clerk if it was
4  cold in here and she said no, but I think she
5  and I have different thermostats.  I don't know
6  if you all are cold.  I'm sorry, it's been cold
7  up here all week because of when they turn the
8  heat on.  We don't need to create our own.  I
9  hope you all will be getting along better than
10  that.
11    All right.  So I've got -- let me get
12  organized here.  All right.  So I saw somebody
13  sent me a list of things suggested for
14  plaintiffs.  I again recall the plaintiffs, I
15  guess, were suggesting that we talk about
16  today, and I have my own list as well.
17    So why doesn't everybody first just remind
18  me of their names.
19    MR. McDEVITT:  May it please the Court, my
20  name is Larry McDevitt, I'm with the Van Winkle
21  Law Firm in Asheville, and I represent the
22  plaintiffs.
23    MR. SINGER:  Jonathan Singer with Fish &
24  Richardson Law Firm, I represent the plaintiffs
25  as well.

Page 7

1    MR. McDEVITT:  Your Honor, we will be the
2  only two speaking today.  If I may, we have
3  some folks here that -- Jeff Thomas with the
4  firm of Gibson Dunn.
5    MR. THOMAS:  Good morning, Your Honor.
6    MR. McDEVITT:  He practices in California.
7  Doug McCann, who is counsel for Duke
8  University.
9    THE COURT:  He's been here before.
10    MR. McCANN:  Yes.
11    MR. McDEVITT:  My partner, Heather
12  Goldstein, who's here trying to watch me make a
13  fool of myself.  And we have Betsy Flanagan
14  here and Doug McCann, who are partners of
15  Mr. Singer here with Fish & Richardson.
16    THE COURT:  All right.  Great.  Thank you.
17    MR. FRUTH:  Good morning, Your Honor.
18  Darrell Fruth on behalf of Apotex and -- with
19  Brooks Pierce.  And with me are Andy Alul and
20  Paul Molino from the Rakoczy, Molino -- a lot
21  of consonants.
22    THE COURT:  All right.
23    MR. ALUL:  Good morning, Your Honor.
24    THE COURT:  Let me just one second.
25  Mr. -- I'll try to say your name.

Page 8

1    MR. ALUL:  Alul.
2    THE COURT:  Okay.  All right.  Thank you.
3    MR. ALLEN:  Good morning, Your Honor.
4  Hill Allen with Tharrington Smith from Raleigh.
5  And I'll let lead counsel introduce themselves.
6    MR. FILARSKI:  Thank you, Hill.  Good
7  morning, Your Honor.  Tom Filarski on behalf of
8  Sandoz.  And with me is Brandon Helms.
9    MR. HELMS:  Good morning, Your Honor.
10    MS. BROOM:  Good morning, Your Honor.  Lyn
11  Broom here on behalf of Hi-Tech.  And we have
12  advised the Court I'm in trial with Judge
13  Osteen downstairs right now.  And Steve Fox
14  from our office.
15    MR. FOX:  Good to see you, Your Honor.
16    THE COURT:  Good morning.
17    MS. BROOM:  He's going to be here today
18  for Hi-Tech.
19    THE COURT:  All right.  Fine.  Well, you
20  get on back to Judge Osteen, since I know you
21  all are in the second week of your trial.
22    MS. BROOM:  Yes, ma'am.  Thank you.
23    THE COURT:  Thank you.  And I apologize
24  that I need people to tell me their names
25  again.  I'm sure I will know you all by the

Page 9

1  middle of November and have you all straight,
2  but I don't see you often enough.  So thank you
3  for your patience on that.
4    So, first of all, if anything is said
5  today that is confidential and needs to be
6  sealed you all need to say that.  I believe
7  your protective order in place for this case
8  calls for you to say that before, since we're
9  in open court, before you say the confidential
10  thing, so the court reporter knows.
11    I doubt we'll be talking about anything
12  confidential today but just a reminder.  And
13  I'm assuming once we get going with the trial
14  everything is public, in public.
15    If that is not so, somebody needs to
16  advise me of how we're going to deal with that.
17  Because that -- generally speaking, courts are
18  open.  I have not looked into this in patent
19  cases but, you know, if anybody is going to
20  want to close the courtroom you're going to
21  need to give me some advance notice because
22  that's pretty serious.
23    All right.  Okay.  So in terms of getting
24  started with the trial, I'll just tell you what
25  I was thinking and then unless you all have

Page 10

1  reached some agreement about time and -- no,
2  okay.  First, I was going to ask you all to
3  confer about stipulations and to encourage you
4  to stipulate to undisputed facts and to get
5  those files, say, by -- is there a deadline in
6  any of these rules?
7       But if you've -- if you get them done by
8  what, October 26th, that's a week before the
9  trial starts.  But I would just encourage you
10 to do that.  It can save us some time and be
11 helpful.
12      And then I know I've already entered an
13 order requiring you to exchange witness lists
14 and exhibit lists and such, and I entered an
15 order telling you when you had to give the
16 clerk copies of the exhibits, but I did not say
17 when I wanted your witness list and exhibit
18 list.
19      So if you all will get those filed on
20 October 26th, your final witness lists, and
21 just a list of your exhibits, as well as
22 providing the clerk with the copies, that would
23 be helpful.
24      So I don't know that we need to have any
25 discussion about those things unless somebody

Page 11

1  has a problem with any of that.
2       MR. McDEVITT:  I don't know that I have a
3  problem, Your Honor, about the exhibits.  We've
4  got the list.  I believe you asked us to
5  provide three sets of exhibits.
6       THE COURT:  Yes.
7       MR. McDEVITT:  Would this be an
8  appropriate time to address that, just for a
9  minute?
10      THE COURT:  We can.
11      MR. McDEVITT:  I think the plaintiff has
12 over 700 exhibits, the defendant over a
13 thousand.  The last time we checked.  I think
14 the total pages of those exhibits come to over
15 around 120,000 pages.  I'm --
16      THE COURT:  I don't think we need to kill
17 that many trees.
18      MR. McDEVITT:  Well, I was wondering, I
19 knew you didn't have that information when you
20 entered the order.  And a lot of it, for
21 instance, on ours, a good chunk of it are --
22 consists of copies of our filing with the FDA
23 and copies of their filings that just take up a
24 big chunk of paper.
25      We were really wondering -- and I know

Page 12

1  they'll do this, we will too.  But the time --
2  by the time we get to trial, while we've listed
3  700, that's going to be pared down
4  significantly.
5       And our thought was, if you were willing,
6  to have us hand up to you the exhibits.  We
7  certainly can send you everything on a CD.  But
8  to hand up the exhibits to you as we -- when we
9  start to examine the witness, you know, we'll
10 have them in the book, or in some way that you
11 can have them at the ready.
12      But we were just concerned about the
13 volume of providing three copies and wondering
14 if you would be open to reconsidering that.
15      THE COURT:  Well, that's legitimate.  I
16 don't think I realized we were going to be
17 looking at that many pages.  But I will --
18 having had an experience earlier this year with
19 a lot of exhibits, and I let the parties do it
20 the way you're proposing, and it really caused
21 some logistical problems in keeping up with the
22 exhibits.
23      So, really, it caused the clerk a lot of
24 problems in keeping up with the exhibits.  So
25 I'm certainly -- would be happy to have some

Page 13

1  more limited extra copies, if you -- but maybe
2  you could give the clerk the electronic copy in
3  one and just the original, the actual exhibit
4  before the trial starts.
5       I mean, if you're going to offer it into
6  evidence, you've got to have a physical hard
7  copy of it.  I think we still do it that way.
8  Right?
9       MR. McDEVITT:  Yes, Your Honor, we do.
10 And the only part of the rationale as the case
11 progresses, it naturally may affect the
12 exhibits that we offer.
13      Perhaps, I wonder if this would work, if
14 we had them identified as best we can, say two
15 days before we're going to put on the witness,
16 with the understanding that if things develop
17 where we have to use another exhibit or take
18 one off, that we could do that.
19      It -- we certainly want to make it work
20 for you, for the court clerk, the defendants,
21 as well as ourselves.
22      All right.  What's the defendants'
23 suggestion?
24      MR. ALUL:  Your Honor, Andy Alul on behalf
25 of Apotex, defendants.  We actually share

Page 14

1  plaintiffs' concern on this. We do have
2  tentatively listed in our Rule 26(A)(3)
3  disclosures I believe over a thousand exhibits.
4  We're still developing our trial strategy.
5       We're tying to figure out exactly which
6  ones we're going to use, but we think that
7  plaintiffs' suggestion is prudent, providing
8  that -- the clerk with electronic copies of all
9  the exhibits, which would save a lot of trees.
10      THE COURT: Yeah.
11      MR. ALUL: And then maybe only providing
12 hard copies of exhibits that we're actually
13 going to be using in direct examinations.
14      THE COURT: Okay. It's just, you know, we
15 keep up with them by exhibit number, 1, 2, 3.
16 So what the problem will arise, it -- well,
17 it's -- if you're actually going to introduce
18 700 exhibits then, you know, I need them in
19 advance.
20      If you're going to introduce 40 or 50
21 exhibits, we can deal with it the way you all
22 are talking about. But --
23      MR. McDEVITT: We are not going to
24 introduce 700 exhibits, or anything close to
25 it. I hate to represent that we're going to

Page 15

1  be -- that it's going to be closer to 50. We,
2  like them, we really don't know yet. Except I
3  know we're not going to be introducing all of
4  the things we've identified. They probably
5  won't, either.
6       MR. ALUL: I can assure the Court, Your
7  Honor, we are not going to be introducing a
8  thousand exhibits at trial, nowhere near that.
9       THE COURT: Okay. That's good to know.
10      MR. McDEVITT: And that's the same with
11 us.
12      THE COURT: I would have trouble reading
13 that much. I would have to take off all of
14 next year. But, of course, you could. Of
15 course, you can put in whatever you need to.
16      Well, just a second. Let me confer with
17 the clerk for a moment.
18      (Discussion held off the record.)
19      THE COURT: Let me ask you one more
20 question, as soon as she turns the mic back on.
21 So are there going to be exhibits that are used
22 repeatedly with witness after witness after
23 witness?
24      MR. McDEVITT: A few.
25      THE COURT: Um-hum.

Page 16

1       MR. ALUL: That's correct, Your Honor.
2       MR. McDEVITT: We have an idea. We just
3  discussed that we both agree, if this helps, we
4  would be willing to have someone from our side
5  and one from theirs get together for just a few
6  minutes with the clerk at the close of each
7  day's trial to make sure that the exhibits that
8  we've identified and marked and offered, that
9  our records fit with hers, that the numbering
10 is correct, that the order is correct. Just to
11 make sure that the records are accurate.
12      THE COURT: Well, that would be necessary.
13 I mean, and the other issue is if you're
14 handing exhibits up to me and they have a
15 numbered sticker on them, okay, that's fine,
16 the first time I'll have it in front of me.
17      But then when you start to use that one
18 again, I'm going to have to go find it and you
19 all will not have given me a notebook or a box
20 of folders with exhibit numbers on it. Do you
21 understand my logistical concern?
22      MR. McDEVITT: Well, our thought is, at
23 least from our perspective --
24      THE COURT: I had this problem. I'm not
25 making this up.

Page 17

1       MR. McDEVITT: When we examine a witness,
2  our plan is to hand you up a notebook that have
3  all the exhibits properly tabbed and numbered.
4       THE COURT: For that witness?
5       MR. McDEVITT: That's correct. And if we
6  duplicate the exhibit for another witness, it
7  will be repeated.
8       THE COURT: All right. If you all are
9  going to do that.
10      MR. McDEVITT: So if it's plaintiffs'
11 exhibit, then we'll have Plaintiffs' Exhibit 3
12 again.
13      MR. ALUL: That's exactly what we're
14 planning on doing.
15      THE COURT: Okay. I'm good. So if you'll
16 just file the electronic copy then with the
17 clerk, of everything that you think you will
18 possibly use, just so I'll have an electronic
19 copy, and I can sort through that along the
20 way. And then we can do the paper ones the way
21 you all suggested.
22      MR. ALUL: Thank you, Your Honor.
23      MR. McDEVITT: And that is handing them up
24 at the time we examine the witness.
25      THE COURT: Yes. Now, are you going to be

**Page 18**

1  able to do that for cross-examination, too?
2  Because I did have that same -- sometimes
3  people are unwilling to say in advance what
4  documents they're going to use in
5  cross-examination.
6      But I just need to be sure I've got -- and
7  that's going to work both ways as well.
8      MR. ALUL:  We'll be handing cross binders
9  up to the Court at the outset of each
10  cross-examination, Your Honor.
11      THE COURT:  Okay.  All right.  So you all
12  will be doing that, too?
13      MR. McDEVITT:  Your Honor, yes.  That's
14  our plan.  But, of course, as with
15  cross-examination, we have the binders and we
16  may -- I would think both sides may say wait a
17  minute, there's another exhibit, where you have
18  a binder that's relevant.
19      THE COURT:  As long as that doesn't happen
20  too hardly often, that ought to be okay.  I
21  just -- you know, it sounds like there's going
22  to be a lot of paper and I need to have it all
23  in front of me.
24      You all are going to have it up on
25  screens, too, so that will facilitate, I

**Page 19**

1  assume.
2      MR. McDEVITT:  That will be fine.  You
3  know, it will take the fun out of it, no trial
4  by ambush.
5      THE COURT:  All right.  Okay.  That's fine
6  then.
7      MR. McDEVITT:  Thank you, Your Honor.
8      MR. ALUL:  Thank you, Your Honor.
9      THE COURT:  So what you'll need to do at
10  the beginning of each witness is you'll need
11  the original exhibits, which the clerk -- the
12  clerk will have to have the original one
13  exhibit.  I'll need a copy and I'll -- I would
14  like one for my law clerk.  So --
15      MR. ALUL:  We were planning on showing up
16  with about seven or eight exhibit binders each
17  day for a particular witness.
18      THE COURT:  Great.  Great.  And you all
19  will be exchanging them to make it easier for
20  each other as well?
21      MR. ALUL:  Yes, Your Honor.
22      THE COURT:  All right.  Good.  Great.
23  Wonderful.
24      MR. FRUTH:  Your Honor, I want to clarify
25  one point.  We have prenumbered these thousands

**Page 20**

1  of exhibits, and our plan was to just use that
2  number.  So it could be ten, 112.
3      THE COURT:  Absolutely.  No problem.
4      MR. FRUTH:  Not duplicate it.
5      THE COURT:  Yes.  There's no reason to --
6  it drives me crazy during a trial to write the
7  number on the sticker and put the sticker on
8  the document.
9      And so yeah, we'll just use -- if you end
10  up skipping big chunks of numbers, that's
11  absolutely fine.
12      Okay.  So first I'm -- I'm assuming that
13  the defendants are going to be working
14  together, that one person will be examining a
15  witness when you're putting on your evidence
16  and one person will be cross -- everybody's
17  nodding okay.
18      MR. ALUL:  Yes, Your Honor.
19      THE COURT:  Okay.  Great.  That makes it a
20  lot simpler.  So as I understand it, the
21  defendants actually have the initial burden of
22  proof; correct, Defendants?
23      MR. ALUL:  Actually, Your Honor, we
24  believe that plaintiffs maintain the burden of
25  proof with respect to infringement.

**Page 21**

1      THE COURT:  Yes.  But you all have the
2  burden to prove invalidity.
3      MR. ALUL:  That's correct, Your Honor.
4      THE COURT:  Okay.  All right.  Well, the
5  infringement is --
6      MR. ALUL:  We have not stipulated to
7  infringement, Your Honor.  We believe they
8  still have the burden of proving the
9  infringement.
10      THE COURT:  Okay.  That's right.  In this
11  case is everybody anticipating the plaintiffs
12  go first?
13      MR. McDEVITT:  Yes, Your Honor.
14      THE COURT:  Are you going to go ahead and
15  put on everything or are you going to focus on
16  infringement and then they're going to put on
17  their case about invalidity and rebut your
18  infringement?  Is that how we're going to do
19  it?
20      MR. McDEVITT:  The latter way that you've
21  described is what the plaintiff anticipates.
22      MR. ALUL:  That's what we anticipate as
23  well, Your Honor.
24      THE COURT:  Okay.  Plaintiff goes first
25  with evidence.

Page 22
1    MR. ALUL:  We rebut that.
2        THE COURT:  At the same time you rebut
3    their evidence and you put on your evidence of
4    invalidity.
5        MR. ALUL:  Yes, that's essentially what we
6    were anticipating, Your Honor.  Infringement,
7    our rebuttal case to that, our case in chief
8    for invalidity, they rebut that.
9        They may come forward with secondary
10   consideration testimony and we'll come back and
11   respond to that, and that's how it will end.
12       THE COURT:  Okay.  We're going back and
13   forth.  I anticipate or suggest that we start
14   at 9:30 everyday and go until about 12:30.
15   We'll take a short break in the middle of the
16   morning.
17       It would be my preference to just take an
18   hour for lunch, come back at 1:30 and stop at
19   4:30.  But if you all have strong feelings, we
20   can take a longer lunch break and go from 2 to
21   5 or 1:40 to 4:45.  But I would prefer a
22   shorter lunch and stop a little earlier at the
23   end of the day.
24       MR. McDEVITT:  We also would prefer to get
25   the most trial time we can possibly get.

Page 23
1        THE COURT:  Yes.
2        MR. McDEVITT:  So we would support the
3    shorter lunch break.
4        MR. ALUL:  Absolutely, Your Honor.
5        THE COURT:  All right.  Great.  It's what
6    we'll do, 9:30 to 12:30 and 1:30 to 4:30.  Now,
7    if you've got a witness on the stand and
8    they're trying to get out on a 6:30 flight, and
9    we need to stay a little bit longer, I'll work
10   with you all about that.
11       Or if we -- and, of course, if we run into
12   time problems and we need to lengthen the court
13   day we can do that.  I just know five and a
14   half hours of court time is actually a lot.  A
15   lot of listening.
16       So I would prefer not to lengthen them
17   much if possible.  And because we are going to
18   have some time constraints, we'll -- on Monday
19   the 5th we will work that whole week on that
20   schedule Monday through Friday.
21       We've already been over this.  The next
22   week we will only be in court on that Tuesday
23   the 13th, and then I'll be available the 19th
24   and 20th the following week for time to finish
25   things up.

Page 24
1    So, does everybody still think that that's
2    enough?  That's five, six, seven, eight days.
3        MR. ALUL:  We anticipate that will be
4    enough for defendants, Your Honor.
5        MR. McDEVITT:  We think so, Your Honor.
6    We're -- I guess everybody's hopeful if we
7    could finish it all in one week, we could.  To
8    be candid with you, we intend to think that we
9    may need to go into the 13th to finish things
10   up, just looking at what we know so far about
11   their case and ours.  We're really hopeful --
12       THE COURT:  Okay.
13       MR. McDEVITT:  -- that we won't get to get
14   to the 19th and 20th.
15       THE COURT:  Good.
16       MR. McDEVITT:  But we thank you for
17   holding those dates aside.
18       THE COURT:  So it sounds like I don't need
19   to put any time limits on you.  You read these
20   books about how to try patent cases and they
21   say make them do it in 20 hours.
22       It sounds like I don't need to do that,
23   that you all are doing pretty well with this
24   working together.
25       MR. ALUL:  We would agree, Your Honor.

Page 25
1        THE COURT:  If things go south I'll impose
2    them, but I'll just rely on you all for that.
3        MR. McDEVITT:  Could I ask you a question
4    about that, Your Honor?
5        THE COURT:  Yes.
6        MR. McDEVITT:  I don't know what the
7    defendants' view of this will be.  Given the
8    timing, without any bad faith on anyone's part,
9    it's possible that things inadvertently could
10   get out of hand timingwise for either side.
11       Our thought is I don't know about putting
12   a stopwatch on it, but if we went into the
13   trial with the view that let's say
14   presumptively, the trial would go the five
15   days, and maybe the 13th, and using that as a
16   template, that each side would get equal time
17   with their evidence, that would put some
18   pressure on both sides to be mindful of the
19   clock and what they have to do.
20       And we tend to think if it's -- if we go
21   into it with that approach that that could work
22   some efficiencies in the trial for the Court,
23   as well as both sides, and while we -- you
24   know, we'd love to have more time.  We think
25   sort of an equal split would be fair to start

Page 26

1  with, if you could think about that.
2      MR. ALUL: Your Honor, we anticipate an
3  equal split in time. But like Your Honor
4  suggested, I mean, if things end up going south
5  we can start imposing more rigorous limits.
6  Limitations, time limits, things like that.
7      But for now we anticipate that each party
8  should be able to -- will get equal time.
9      THE COURT: Yes. I mean, that sounds
10  fair. And, of course, your time is -- includes
11  your cross-examination of the other side's
12  witness, which is where things -- usually
13  people do pretty well on their direct.
14      But people sometimes get caught up in
15  cross-examination and, you know, sometimes
16  quite understandably. So yeah, your
17  cross-examination time comes out of your time,
18  not the other person's time.
19      All right. Yeah, roughly even. That
20  sounds appropriate. And we'll keep up with it,
21  roughly.
22      MR. McDEVITT: Thank you, Your Honor.
23      THE COURT: Okay. Now, I was thinking I
24  don't know how long you all think you need for
25  opening statements. You've already educated me

Page 27

1  a good bit about this case. On the other hand,
2  I would probably like to have you make some
3  sort of opening statement in the real sense of
4  here are our witnesses, this witness is going
5  to say this, the next -- that kind of opening
6  statement, not an argument opening statement.
7      So I would probably find that fairly
8  helpful, but I don't want to use up a whole lot
9  of time on it when you've got a lot of
10  witnesses to get through. So I was thinking
11  maybe 30 minutes each.
12      MR. McDEVITT: That sounds great.
13      MR. ALUL: That's what we were going to
14  suggest, Your Honor. We can supply the Court
15  with a roadmap of essentially where we're going
16  in like 20 or 30 minutes.
17      THE COURT: That sounds perfect. All
18  right. And then your closing argument, you
19  know, we can see how it goes. I'm going to let
20  you file post-trial briefs, and we can -- I
21  don't know that I would make you come back to
22  do closing arguments if we finish the evidence
23  on Tuesday the 13th, you know.
24      But, I mean, we can leave that open, if
25  you all want, at this point and just see where

Page 28

1  we are in the trial and, you know, with the
2  thought that maybe you'll take 30 minutes or so
3  at the end of the case and make a closing
4  argument.
5      MR. ALUL: We would prefer the option, or
6  keeping at least the option open, Your Honor,
7  of maybe coming back for closings. But yes,
8  we're interested in doing closing statements as
9  well.
10      MR. McDEVITT: And plaintiffs are too,
11  Your Honor.
12      THE COURT: All right.
13      MR. McDEVITT: We certainly don't expect
14  lengthy closing arguments in a bench trial, but
15  we would like for the chance to synthesize
16  and -- and sort of rehash our main positions.
17      THE COURT: Well, I would like for you to
18  do that. And, of course, I'll be here on the
19  19th and 20th and, you know, we can. I'm happy
20  to.
21      MR. McDEVITT: We'd be willing to come
22  back.
23      THE COURT: All right.
24      MR. ALUL: Absolutely.
25      THE COURT: Well, we'll leave it open and

Page 29

1  plan on 30 minutes or so for your closing
2  arguments when we get to it maybe a little
3  longer, depending on how confused I've gotten.
4  If that sounds okay.
5      MR. McDEVITT: Your Honor, when you said
6  post-trial briefs, which we certainly would
7  like to do, does that include -- we're going to
8  be filing with you a proposed judgment with
9  findings of fact and conclusions of law.
10      THE COURT: Yeah, it does. I'm going to
11  let you submit revised ones.
12      MR. McDEVITT: That's included with --
13      THE COURT: It says so right here. Yeah.
14  I mean, I assume that after the evidence would
15  actually be in, however well you all have
16  prepared. Sometimes it comes in a little bit
17  different.
18      So I do want it before trial, that's going
19  to help me prepare. But I will give you a
20  chance to submit revised findings, proposed
21  findings of fact and conclusions of law along
22  with your post-trial briefs.
23      And what I would suggest about that is
24  that each of you file your -- file them at the
25  same time and then I'll -- we'll give you a

**Page 30**

1  little time to respond to the other side's.
2  But rather than one side go first, because of
3  the way this case works.
4      So that's what I would propose. You know,
5  I could set the date -- the specific dates for
6  those at the end of the trial. Once we know
7  when the trial is over.
8      But I will say I would prefer that -- I'm
9  not going to give you a lot of time. Because I
10  do better when I have things fresh in my mind.
11  So, you know, I'll be looking at a couple of
12  weeks. For --
13      MR. McDEVITT: That will be fine, Your
14  Honor. We'd like that, too.
15      THE COURT: All right. And we'll just --
16  I'll set the time for that once the trial
17  itself is over. But you all should expect it
18  to be pretty short, a couple of weeks, and then
19  maybe a week to respond to the other side's,
20  something like that.
21      I would propose -- I forgot this. At the
22  close of each -- we did do this, really, if you
23  all agree on it, I'm amenable to however you
24  want, but I do like everybody to know certainly
25  no later than close of business who the

**Page 31**

1  witnesses are going to be the next day.
2      If you'll want to agree on giving each
3  other more notice of that, then I'm agreeable
4  to that. If we're going to be able to try it
5  in five or six days, you know, maybe it's not
6  quite as important.
7      Because -- but I do think everybody needs
8  to clearly know who the witnesses are going to
9  be tomorrow.
10      MR. ALUL: We agree, Your Honor. As I
11  said earlier, we're still developing our trial
12  strategy. That's going to play into how much
13  lead time we'd like as far as disclosures of
14  witnesses that are going to be put up on the
15  stand for direct examination on a particular
16  day and what exhibits are going to be used in
17  that direct examination.
18      So we would ask if the parties be allowed
19  to meet later on this month and come to
20  agreement on a date, whether it's 24 hours in
21  advance or 48 hours in advance on that.
22      MR. McDEVITT: We're fine with that, Your
23  Honor.
24      THE COURT: All right.
25      MR. McDEVITT: Actually, our thought is it

**Page 32**

1  would just make it more efficient for everyone
2  if we did it two days out with identification
3  and witnesses and, you know -- so but we'll
4  certainly talk with him about that and get back
5  to you if you want.
6      THE COURT: All right. Yeah, I'm happy
7  for you all to agree. I will require you, at
8  the latest, to do it, you know, close of
9  business on -- well, close of business on
10  Friday before the trial starts on Monday.
11      You'll have to say who your witnesses are
12  for Monday. And close of business on Monday,
13  if you're still putting on your case, you
14  all -- that's what I will require.
15      But I'm happy for you all to agree on
16  giving each other more notice. Because,
17  obviously, what goes around comes around.
18      MR. McDEVITT: Right.
19      THE COURT: So yeah. And you'll exchange
20  your exhibits as well. Everybody's prepared on
21  that. All right. Good. Now, Rule 26 requires
22  you all to disclose your deposition
23  designations. I think you've got to do that --
24  actually, you already did that; right?
25      MR. McDEVITT: We have.

**Page 33**

1      THE COURT: And you have to file your
2  objections next week sometime. Late at the end
3  of the week. Are there going to be -- what are
4  you all anticipating about deposition?
5      I'm trying to get my mind around this.
6  Are you going to have like five or six pages
7  from a deposition or are people going to be
8  submitting entire depositions?
9      MR. McDEVITT: From the plaintiffs' side,
10  Your Honor, it's kind of a multiple approach
11  here. Most of the depositions were videotaped.
12  Our expectation is that we would play
13  designated portions of some depositions for you
14  to view.
15      Our thought is with some others, depending
16  on what you prefer, that we might hand up the
17  copy of the deposition transcript with the
18  sections marked for you to read.
19      Or certainly, we can read it in open court
20  and enter it in the record. So we've got kind
21  of two ways of doing it. We don't propose to
22  submit to the Court all of the depositions that
23  have been taken in this case.
24      THE COURT: That's good.
25      MR. McDEVITT: We've gone through and

Page 34

1  tried to pick out the parts that we think are
2  germane, really, to the trial.
3       THE COURT: All right.
4       MR. McDEVITT: So we're -- we will do it
5  any way you want to, but we would like to be
6  able to play some portions. And then the
7  other, if you want us to hand it up and you
8  read it or you want us to read it into the
9  record in court, we can do it whichever way you
10 want to.
11      THE COURT: All right.
12      MR. ALUL: Your Honor, our only concern
13 with that is that both sides of us have quite a
14 few witnesses we may call portion of the
15 Rule 26(A)(3) disclosures.
16      And as I mentioned, we're still developing
17 our trial strategy. I have no idea what
18 plaintiffs are going to do, but I anticipate
19 both sides are going to be presenting paper
20 witnesses that could eat up a lot of time from
21 the five or six or seven days we've allotted
22 for trial.
23      So we certainly don't intend -- most of
24 defendants' depositions were recorded
25 stenographically, not videotaped. We do not

Page 35

1  intend on handing up full transcripts. We're
2  going to be abbreviated. They're going to be
3  targeted and they're going to be highlighted
4  and condensed.
5       So we would prefer, if it's acceptable to
6  the Court, to just hand paper witness
7  transcripts.
8       Or in their case, in some cases I guess
9  videotapes at the end of the parties' case in
10 chief, or whatever. If the Court would prefer
11 to have a certain deposition transcript read or
12 videotape played, we could do that.
13      But our concern is that if every paper
14 witness had to be read into the record, that
15 could really eat up a lot of time.
16      THE COURT: Well, I'm not -- again, it
17 sort of depends on how much of this we're
18 talking about. But if you all are going to
19 cull the depositions and just give me what I
20 need and be selective.
21      MR. McDEVITT: We are.
22      THE COURT: So that I -- if it were a live
23 witness I'd be sitting up here saying Rule 403,
24 move along, Counsel. But I can't do that with
25 the depositions. But I don't want you giving

Page 36

1  me stuff I have to wade through that's full of
2  repetitive, not helpful stuff.
3       But if you all are going to go through it,
4  I'm happy to read it and not take court time
5  for that.
6       MR. ALUL: That was exactly our intention.
7       THE COURT: Now, if there is something
8  that you think you really want to put on in the
9  courtroom, either video or you want to read a
10 page or two, I don't really have a problem with
11 that.
12      We have a limited amount of time. If you
13 all want to spend your time, if there's
14 something important enough that you want to do
15 that I'm not going to prevent you from doing
16 it, at least not as long as we have time to do
17 it.
18      But I'm happy to receive them and read
19 them, so long as you all do what you said and
20 really give to me the parts that I need to
21 have.
22      MR. McDEVITT: That's the plan.
23      THE COURT: All right. That's great.
24      MR. McDEVITT: We are working already and
25 already have done some culling. In fact, one

Page 37

1  of the things that we would ask you to
2  consider, and ask the other side to consider
3  too, we are going to voluntarily provide --
4  we've done our deposition designation.
5       We're going to voluntarily provide by I
6  think it's the 15th, our counter designations.
7  We think that's a good, efficient thing to do.
8       THE COURT: Um-hum.
9       MR. McDEVITT: And I don't know whether
10 you may require it or what, but we think that
11 would move things along if we get that done
12 pretty soon, here in mid October.
13      THE COURT: I guess that's not really
14 covered by the rule, is it?
15      MR. McDEVITT: No, that's not, Your Honor.
16 Which is why we're voluntarily doing it.
17      MR. ALUL: And we were fine with doing
18 that, Your Honor. I think we had informally
19 agreed to maybe the 15th to exchange counter
20 designations and objections to their
21 designations. We're fine with that.
22      THE COURT: All right.
23      MR. ALUL: I was just going to say, Your
24 Honor, we just had one other concern. We're
25 still analyzing Rule 26(A)(3) disclosures and

Page 38

1  their witness list.

2       Just off the top of our head, some of the

3  witnesses they cited appears that are on their

4  list, that they may present as paper witnesses,

5  may be witnesses they still have control over.

6       And we would certainly have objections to

7  that. We think if they do have over -- control

8  over these people, they need to bring them into

9  court.

10      And so we just wanted to give the Court a

11 little bit of notice that we are going to have

12 an objection like that to the extent that they

13 are going to seek to present a witness, paper

14 witness, at trial, that in reality they still

15 have control over, we're going to have

16 objections to it.

17      THE COURT: Okay. Well, as I read Rule

18 26, you do have to file your objections to

19 deposition designations and admissibility of

20 exhibits I guess the 19th.

21      And so that kind of objection could

22 certainly be noted by then. But thank you for

23 giving me the heads up. I hope you all will be

24 able to work that out. But if not, that's

25 good.

Page 39

1       All right. Good. So you're going to do

2  counter designations on the 15th, and that

3  sounds like that will save some time and be

4  helpful. And objections to any counter

5  designations, you do it by the 19th.

6       MR. McDEVITT: Yes, Your Honor. We think

7  we can do that by the 19th.

8       THE COURT: Okay. Great. Wonderful. All

9  right. If you're going to use any

10 lawyer-created, demonstrative exhibits during

11 opening or closing, you would certainly need to

12 exchange those.

13      Somebody, I think, expressed some concern

14 about that. But -- now, what I have left --

15 oh, okay. So I didn't schedule a settlement

16 conference. I think I said I wasn't going to.

17 Didn't I?

18      MR. McDEVITT: Yes.

19      THE COURT: All right. Good. So if you

20 all want to settle it, go ahead. We've got a

21 Motion in Limine left to talk about. Two of

22 them have been filed, one of them, a response,

23 has been filed.

24      But before we get to that, what other

25 housekeeping matters have I not addressed that

Page 40

1  you all wanted to talk about? I may not have

2  covered everything on the plaintiffs' list,

3  but --

4       MR. McDEVITT: Would you like me to speak

5  to those, Your Honor?

6       THE COURT: That would be fine.

7       MR. McDEVITT: Mr. Singer is going to be

8  talking about two issues on our list, but let

9  me sort of get mine out of the way.

10      Do you have a preference about whether we

11 use a projector with a screen or electronic

12 monitors?

13      THE COURT: I've got a screen, you put the

14 screen -- a bigger monitor right up on the

15 bench, which has worked well for me in the

16 past, and seems to be less obstructive of sight

17 views than a screen and a projector.

18      But if that's all right with everybody.

19 And you all -- I think you can put monitors up

20 on your tables. So if that's --

21      MR. McDEVITT: I don't think we

22 particularly care. We just wanted to find out

23 what your preference was, Your Honor.

24      THE COURT: You know, I don't know

25 anything about what anything costs anymore. If

Page 41

1  it's easier to have a big screen over there in

2  front of the jury box, I'm okay with that. But

3  I would just ask you all to do the same thing

4  whatever you do, so that we don't have to go

5  back and forth between two different things.

6       The monitors, if I could just ask you to

7  work with the clerk and our IT people on that,

8  you know, because I believe we're able to put a

9  monitor up on the witness box; right?

10      MS. SANDERS: Yes.

11      THE COURT: So I'll let you all work with

12 them about that. I don't really care. With a

13 jury I strongly prefer the monitors because the

14 projectors are kind of difficult.

15      But I don't really have a preference.

16 Whatever you all agree on that's easiest and

17 cheapest is okay with me, as long as the clerk

18 and our IT people say it's okay. All right.

19      MR. McDEVITT: One of the things that

20 we've not been able to resolve among the

21 parties, we feel like that -- I mean, the

22 parties can supplement their exhibit list.

23      We feel like that there needs to be some

24 sort of deadline on that, and we're proposing

25 that the parties can supplement their exhibit

Page 42

1  list by October the 19th. We probably need
2  some guidance from you about that.
3      It seems to us that having some sense the
4  parties at least know what's on the list.
5  Whether they use it or not is another issue.
6  We're willing to have ours done by the end and
7  would like for the defendants to do the same.
8      But I really wanted to mention that to you
9  to inquire as to whether or not the Court had
10  any thoughts about the wisdom of that
11  procedure.
12      THE COURT: Okay.
13      MR. ALUL: Your Honor, it's our
14  understanding that the local rules don't really
15  contemplate any supplementation of the exhibit
16  list under Rule 26(A)(3).
17      We prepared some pretty comprehensive -- a
18  pretty comprehensive trial exhibit list. So we
19  wouldn't necessarily object outright to this
20  idea that the parties be allowed to supplement
21  their trial exhibit list, but what we would ask
22  is that maybe a good requirement be attached to
23  it.
24      THE COURT: Okay.
25      MR. McDEVITT: Your Honor, I don't know

Page 43

1  that we would particularly resist that. It
2  seems kind of unnecessary. Both parties have
3  been working like crazy, they've got over a
4  thousand, we've got over 700.
5      It's -- we've made a good faith disclosure
6  as attorneys and officers of the court of where
7  we are today. It may be that we found some
8  others.
9      We're not going to double the number of
10  exhibits, but we just recognize that there
11  probably are some that need to be out there and
12  included in the list that we didn't find the
13  first time.
14      If they don't have any of those, well
15  that's -- you know, that's great for them.
16  Fine. I would be surprised at that. But I
17  don't particularly see any need to take the
18  Court's time of having to review the exhibits
19  and find good cause or not.
20      I think counting on us to practice law, to
21  be good lawyers and deal in good faith ought to
22  be sufficient.
23      THE COURT: Well, the rules don't
24  contemplate supplementing the exhibit list but,
25  you know, I think we all know, in reality, some

Page 44

1  people say oh, I left out this one. And I
2  would assume you all would be working with each
3  other if somebody -- if you left out three or
4  four exhibits, there's not going to be any
5  problem.
6      If somebody's talking about supplementing
7  with 30 or 40 exhibits, I think that's a
8  problem. So if you have -- if either side has
9  identified exhibits that weren't initially
10  disclosed, you don't need to be waiting on any
11  deadline to supplement, you need to be turning
12  them over as you discover them and identified.
13      And as long as there's only, you know,
14  three or four or five or six, or some number
15  like -- I don't know what the number would be
16  where it would stop being reasonable, but that
17  probably depends on how you all are -- if one
18  side has ten and the other side has ten, then
19  ten is probably reasonable.
20      But if one of you starts showing up with
21  30 or 40 documents, I would probably have a bit
22  of a problem with that.
23      MR. ALUL: That's our concern, Your Honor.
24      THE COURT: So I'm not going to be excited
25  about that. I'm going to let you all work this

Page 45

1  out on your own and if you -- if somebody
2  starts being unreasonable about this and the
3  numbers get up, you know, much over ten, I
4  would have -- you know, you're supposed to
5  provide them.
6      But I'm sensing, you know, sometimes you
7  look at the other person's exhibit list and you
8  say oh, duh. And if it's responsive to the
9  other person's list and something for some
10  reason didn't occur to you, well you kind of
11  understand a few exhibits here or there. But,
12  you know, you all have been working on this
13  case a long time.
14      MR. McDEVITT: Your Honor, are you going
15  to put a deadline on us or is that just open up
16  till trial?
17      THE COURT: I am not giving you any
18  additional time to exchange exhibits. But I'm
19  relying on you all to give each other some
20  professional courtesy on that.
21      And if you need to come to me, if a
22  problem develops specifically, then you can
23  come. But I'm assuming you all will work with
24  each other to a reasonable extent and that
25  nobody's going to be coming up with a whole lot

**Page 46**

1  of extra exhibits here.
2      MR. McDEVITT: We're certainly not.
3      THE COURT: That's my general view about
4  it.
5      MR. ALUL: We completely agree, Your
6  Honor. If we're talking about three or four
7  exhibits, after looking at our exhibit list,
8  that they want to add in response, that's fine.
9      But our concern is that they're
10 essentially trying to move the Rule 26(A)(3)
11 deadline, and that's what we don't want.
12     MR. McDEVITT: We were not trying to do
13 that.
14     THE COURT: Good. Well, then I think you
15 all can work this out. All right. What else
16 have I not addressed that somebody thinks I
17 need to address?
18     MR. McDEVITT: Your Honor, give me just a
19 minute, if you would, to -- oh, on the
20 demonstrative exhibits that we might use in
21 opening statements, or even closing, we didn't
22 talk about any timing.
23     And my assumption is that if each side
24 gets them to the other 24 hours in advance, or
25 whatever it is, that's okay.

**Page 47**

1      THE COURT: Yes. Trial is going to start
2  on Monday. I would hope you get them to each
3  other by Friday.
4      MR. McDEVITT: All right. That's fine.
5  We can do that.
6      THE COURT: You don't have to identify --
7  I'm going to let -- if you want to use regular
8  exhibits in your opening statement, that's
9  certainly fine.
10     MR. McDEVITT: Certainly.
11     THE COURT: And you don't need to identify
12 those. I'm just talking about counsel created.
13 I don't know summaries or chart. I don't know
14 what you all might do. I just would like
15 people to be aware of those in advance.
16     MR. ALUL: Your Honor, just some
17 clarification. Is the Court mandating a Friday
18 disclosure or can we work with counsel or
19 plaintiffs and come to maybe a Sunday or
20 Saturday?
21     THE COURT: You all can agree on a later
22 deadline.
23     MR. McDEVITT: Friday or later as agreed.
24     THE COURT: Later as agreed. Sounds like
25 you all want later as agreed. That's fine with

**Page 48**

1  me. I would like you to exchange them, so
2  whatever you all agree on is fine with me.
3      MR. McDEVITT: Your Honor, Mr. Singer
4  would like to address a couple of matters,
5  including our Motion in Limine, and some
6  production discovery issues.
7      THE COURT: Okay. I don't want to talk
8  about the Motion in Limine yet, because I want
9  to get through all the housekeeping matters
10 first.
11     MR. McDEVITT: I believe that that
12 concludes my housekeeping, Your Honor.
13     THE COURT: Okay.
14     MR. McDEVITT: And thank you very much.
15 You got most of it.
16     THE COURT: All right. Housekeeping for
17 the defense.
18     MR. ALUL: Nothing from the defense.
19     THE COURT: Okay. So on my list then that
20 leaves the motion just -- we can have a
21 housekeeping discussion first about the Motions
22 in Limine, and then did you say there was a
23 discovery issue?
24     MR. McDEVITT: Yes, Your Honor.
25     THE COURT: Okay. So the two Motions in

**Page 49**

1  Limine that I saw, unless you all filed
2  something this morning or late yesterday
3  afternoon, there was the defendants' motion on
4  the alleged invention date, and that one was
5  just filed the other day, no reply yet.
6      And then the plaintiffs' motion about
7  experts, which the defendants have responded
8  to. So I'm assuming we can hear that one, the
9  one about the experts today, everybody is ready
10 on that one.
11     (Attorney Singer nods head.)
12     THE COURT: Okay. And then the invention
13 date, that was your motion, so are -- is it
14 productive to have a discussion about that one
15 today or do we need to put that one off till
16 Monday morning when trial starts?
17     MR. SINGER: We'd ask you to put it off,
18 Your Honor, so that we can respond to that.
19     THE COURT: All right.
20     MR. SINGER: But we're happy to address it
21 sooner than the morning of trial, if that works
22 for the Court.
23     THE COURT: Well, I don't know. I've only
24 read one side. Okay. So the only thing we
25 have left is this one Motion in Limine. And

Case 1:11-cv-00650-CCE-LPA   Document 82   Filed 10/19/12   Page 13 of 49

1  then what's your discovery issue?

2      MR. SINGER:  It's very straightforward,

3  Your Honor.  I can address it very quickly.  As

4  the Court knows from the prior hearings, this

5  is a case about the defendants' ANDA file, the

6  FDA and ANDA.

7      And the interesting thing about the ANDA

8  process is it's an ongoing process.  So the

9  defendants' file on ANDA and then the FDA

10  reviews the ANDA and issues sort of

11  correspondence -- not sort of issues

12  correspondence to the defendants asking them

13  for further information, giving them guidance,

14  saying certain things about the ANDA.

15      And so the whole package of what the ANDA

16  is, is the application, then plus the

17  correspondence and then any responses to the

18  correspondence from the defendants.

19      In preparing for trial we asked all the

20  defendants to say okay, this is an ongoing

21  process, can you please supplement your

22  productions to give us whatever additional FDA

23  back and forth there has been under ANDA for

24  the last ten months or so.

25      And defendants Sandoz and Hi-Tech promptly

1  provided the information.  Defendant Apotex

2  gave us a response that said I think he can

3  speak for himself, that said there's no

4  responsive and relevant correspondence.  We

5  tried to confirm, does that mean is there no

6  correspondence or is it you don't think it's

7  relevant.

8      We never got a response.  The last letter

9  we got, or the last information that we got

10  from Apotex about this FDA exchange is from

11  December of 2011.  So we're ten months since

12  then.  They produced it before.

13      They won't tell us there's none since and

14  it's relevant to the case.  We're being asked

15  to put forward our burden on infringement.  We

16  don't know what's in that correspondence and

17  what's in their responses.

18      And if you look at the authorities, that's

19  the package the Court is considering in this

20  case is the actual addition -- initial

21  application, then the FDA's letters and the

22  defendants' response thereto.

23      This is pretty simple stuff.  The other

24  defendants have produced and all we've been

25  told is there is no responsive and relevant

1  correspondence in the last ten months which, in

2  my experience, is unlikely that there isn't any

3  correspondence from the FDA, we ask that it be

4  produced.  That's pretty straightforward.

5      THE COURT:  For Apotex.

6      MR. ALUL:  At the outset I would like to

7  characterize how FDA correspondence regarding

8  ANDA is viewed.  The ANDA is the submission

9  that's made by the drug company initially.

10      Further correspondence between FDA and the

11  applicant on that is exactly that, the further

12  correspondence between the applicant and the

13  FDA.  They did approach us several weeks ago

14  and asked us if there were any recent ANDA

15  correspondence.

16      We did our due diligence and spoke with

17  our client, and there were no responsive or

18  relevant documents to this case, Your Honor.

19  That answer was not good enough for them.

20      They came back and said, as Mr. Singer

21  just explained, that they want to know if there

22  are any FDA correspondence between Apotex and

23  the FDA concerning the ANDA.

24      And our position is pretty simple, Your

25  Honor.  What they're trying to do is discover

1  whether or not there exists any relevant or

2  responsive information here with respect to

3  this and with respect to -- and our position is

4  that in itself is nondiscoverable.

5      But, Your Honor, what we haven't heard

6  from -- what we have just heard from Mr. Singer

7  was this categorical assertion that this

8  conclusory assertion that this stuff is

9  relevant.

10      In fact, Your Honor, they haven't told us

11  why it's relevant.  This is a very simple,

12  narrow case asserting method claims from two

13  patents and the validity of those patents.

14      What they haven't explained to us is how

15  any recent correspondence between us and FDA

16  concerning the ANDA could bear on infringement

17  or invalidity, which are the only two issues in

18  this case.

19      What we suspect that they're trying to do,

20  Your Honor, is get their hands on this

21  correspondence and try to gauge where we are in

22  the regulatory approval process.

23      Which would unfairly bestow on them, Your

24  Honor, a competitive business advantage against

25  us.  And that's why we strenuously object to

**Page 54**

1  this. We have assured them that there are no
2  FDA correspondence that concern any aspect of
3  the infringement case or any aspect of the
4  invalidity case.
5       And that's all they deserve under Rule 26.
6  And so that's our position, Your Honor.
7       THE COURT: Okay.
8       MR. SINGER: May I briefly respond, Your
9  Honor?
10      THE COURT: All right.
11      MR. SINGER: Well, it's an assurance that
12  there's no relevant -- I have no idea what the
13  basis of that assurance is. Typically, in an
14  ANDA case the FDA makes comments on the
15  information in the ANDA and whether or not it's
16  relevant to infringement.
17      It has to be remained to be seen. As far
18  as validity, sometimes the FDA makes comments
19  that can be relevant to the validity of the
20  patent based on the technology that's in the
21  ANDA.
22      Without having seen the correspondence, I
23  can only deal in hypotheticals. As to
24  typically FDA correspondence does come into
25  evidence in an ANDA case. So I don't see why

**Page 55**

1  it's any different here.
2       THE COURT: Okay. I don't actually know
3  anything about this. You all are appreciative
4  of this. I mean, I know a little bit about it,
5  but everything I know you all have told me
6  before.
7       So this sounds like a Motion to Compel to
8  me; right?
9       MR. SINGER: If that's how the Court wants
10  us to proceed, that's how we will proceed.
11      THE COURT: So you file your Motion to
12  Compel by Monday and you file your response by
13  next Friday and you file your reply by the next
14  Monday, and I'll rule on it.
15      MR. SINGER: Very well. Thank you, Your
16  Honor.
17      THE COURT: And that way you can put it
18  before me and I'll have time to think about it
19  in some context and I can hopefully get you a
20  decision before trial starts.
21      MR. ALUL: I would just say one last
22  thing, Your Honor, and maybe we can short
23  circuit this briefing process if Mr. Singer and
24  the plaintiffs could just identify for us what
25  it is they're looking for.

**Page 56**

1       You know what, in the 12 years that I've
2  been doing this I have not seen -- I can't
3  recall seeing any FDA correspondence that
4  touches on the validity of a patent that the
5  brand owner has.
6       So that I disagree with Mr. Singer on.
7  Certainly, there may be some FDA communications
8  that touch on infringement, but this is a very
9  narrow infringement case involving method
10  claims only.
11      So if Mr. Singer could provide us with
12  some guidance as to what he's looking for here,
13  we could help him out. Is he concerned about
14  any changes we've made to our labeling? I can
15  tell him categorically there have been none.
16      THE COURT: Well, you know, you all
17  certainly can discuss it and if there are
18  competitive concerns then, you know, I don't
19  know what your protective order says, I didn't
20  go look at it to see if there was any counsel
21  eyes only designation provisions in there but,
22  you know, you might solve it that way as well.
23      I certainly -- I'm happy for you not to
24  file the motion and for you all to resolve it
25  and would encourage you to talk about it. But

**Page 57**

1  I don't know enough to give you any guidance at
2  this point. So, sorry.
3       MR. SINGER: We will try to resolve it,
4  Your Honor.
5       THE COURT: But if you don't, you know --
6  and you don't have to write me a long book
7  about it in terms of the brief, but you all
8  have laid out your arguments.
9       You know, tell me you kind of know what
10  the other person is going to say, so tell me
11  what I need to know and I'll get you so -- I'm
12  pretty fast, usually.
13      So I'll -- I do have some other stuff
14  going on the week of the 22nd, but I'll get
15  you -- I might not get you an opinion, but I'll
16  get you a decision, which is usually good
17  enough.
18      MR. ALUL: Thank you, Your Honor.
19      MR. SINGER: Thank you.
20      THE COURT: Pretty fast if you're not able
21  to work it out. But, you know, I would
22  encourage you while you're here to look at each
23  other and try to work it out so that maybe --
24  sometimes that's helpful. All right.
25      What else besides the Motion in Limine?

**Page 58**

1    MR. SINGER:  I think that's it.
2    THE COURT:  Nothing else.  Down to the
3  Motion in Limine.  Okay.  Then that is the
4  plaintiffs' motion, and I'll be glad to hear
5  from you.
6    MR. SINGER:  Okay.  So, Your Honor, as you
7  said, this is our Motion in Limine and what it
8  concerns is the defenses of anticipation and
9  obviousness raised by the defendants through
10  two of their experts, Dr. Sherman and
11  Leibowitz.
12    And just as some background, those
13  defenses are validity defenses to the patent
14  and the way they differ, anticipation rises
15  under Section 102 of the Patent Act 35 U.S.C.
16  102.
17    And what they're required to prove is also
18  clear and convincing evidence that one single
19  prior reference, when we use the word
20  anticipates, the patents, and that means that
21  that single prior reference, without looking to
22  anything else, has all the elements of the
23  patent claim.
24    And that's a good way to think about the
25  difference between obviousness, where the

**Page 59**

1  single prior reference doesn't have all the
2  elements of the patent claim and you have to
3  combine whatever prior reference you're talking
4  about with something else.
5    So I think it's an easy way to think about
6  it.  Anticipation is one reference and
7  obviousness is one or more.  And obviousness
8  can be combined with multiple references, you
9  might say, or they will say that our patents
10  are invalid based on references A considered in
11  light of B, something like that.
12    And for anticipation they're required to
13  prove that's anticipated by reference A only.
14  They don't get to look at B.  So that's sort of
15  the background, and these are the opinions we
16  have a dispute about.
17    We've made a little bit of progress,
18  actually.  In their response to the Motion in
19  Limine I think the zone of disagreement has
20  narrowed, which is good.
21    And I think the response was hopeful to us
22  to understand where they're coming from.  So
23  there's really just two points of disagreement
24  left.
25    Let me address those, and then I'll weave

**Page 60**

1  in the points of agreement as well.  In
2  discovery defendants literally identified
3  hundreds of references that they contend relate
4  to their proof of validity.
5    And they actually filed with the Court on
6  Friday their so-called 282 statement which
7  lists 518 pieces of either prior or other
8  references that they contend they will use to
9  support their validity arguments.
10    A lot of stuff, hence, the length of the
11  parties' exhibit lists.  And the expert
12  discovery process is hopefully to narrow those
13  down.  And they have.  They've narrowed it down
14  somewhat.
15    And I want to start with Dr. Sherman's
16  report and the issue of obviousness because on
17  anticipation I think the response we're in
18  agreement with where the -- I think both
19  parties said the same thing about anticipation.
20    They made some comment that something like
21  might come up at trial.  We'll handle that at
22  trial.  If something else comes up that we
23  think is improper, we'll raise an objection
24  right there.
25    But it seems like the parties are

**Page 61**

1  otherwise on the same page, on the anticipation
2  side of Dr. Sherman's opinion.  So where there
3  is disagreement is on the obviousness side.
4  That's where you combined A plus B, and if you
5  want, C plus D, et cetera.
6    And in our motion listed the specific
7  combination, the specifics A plus B that Dr.
8  Sherman had made in his report.
9    And I didn't see defendants say that that
10  was an erroneous list.  What they said in
11  response, though, was that Dr. Sherman had
12  discussed other references elsewhere in his
13  report and that by saying and reserving the
14  right to rely on those other references, that
15  that was a sufficient disclosure of a
16  combination to us.
17    And therefore, they should be allowed to
18  raise any combination of any reference that's
19  in his report for obviousness, whether or not
20  he specifically mentioned it or not.
21    And I think there are roughly three dozen
22  references in his report, Your Honor.  And I'm
23  not going to do the math, but the possible
24  combinations are in the hundreds, if not
25  thousands, of the way one could combine those

1  various references.

2      And so we think that under Rule

3  26(A)(3)(B), which is the rule requiring the

4  bases and facts of your opinion, just simply

5  referring to I've raised other references

6  elsewhere in my report, that I think also

7  support the obvious.

8      The patent is not sufficient and unfair.

9  And we don't have from Dr. Sherman, if you

10  will, anything beyond the specific combinations

11  that he raised.

12      And to ask us to figure out and to say

13  it's fair notice, which is I think their

14  argument, that any reference in his report,

15  because he said, and by the way, I think it's

16  all true about these other references is

17  sufficient disclosure, we think violates both

18  the letter and spirit of Rule 26.

19      With respect to Dr. Leibowitz, it's

20  actually, I think, the reverse.  In responding

21  they said his obvious opinion.  In our Motion

22  in Limine, at his deposition Dr. Leibowitz was

23  less than, how shall I say, is less than

24  fulsome about the bases of his obviousness

25  opinion.

1      But with the response from defendants in

2  their motion response, I again think we are on

3  the same page as to what Dr. Leibowitz is going

4  to argue at trial.

5      Again, if there's an issue we'll raise it

6  on the spot.  The only point of disagreement

7  that we have with Dr. Leibowitz now is on the

8  anticipation side.  And that's, again, that's

9  where one reference has to have everything.

10      And we listed in our motion the references

11  that we understood Dr. Leibowitz to rely on,

12  and defendants agreed with that, but then added

13  one additional reference, that they said he

14  referred to in a footnote on page 18 of his

15  report, it was essentially a see also, and then

16  citing the reference.

17      There's no page citation, there's no

18  discussion of that reference in his report.

19  And so, again, we don't think it's proper to

20  say that you've disclosed an opinion based on a

21  footnote that says see also this reference,

22  where the reference is not otherwise disclosed

23  or discussed in this report.

24      That's really where we are, Your Honor.

25  Like I said, we've made some progress.  We

1  think the disclosure in Dr. Sherman's

2  obviousness section is woefully inadequate for

3  him to then come to trial and essentially, Your

4  Honor, say I'm going to pick this reference

5  from page 8 of my report and combine it with

6  this reference on page 40 of my report and

7  render the patent's obviousness because he

8  didn't make that specific combination in the

9  report.

10      And then for Dr. Leibowitz we are arguing

11  over the Woodward reference that they referred

12  to in footnote 33 at page 18 of his report.  We

13  don't think that a, as I said, see also is a

14  disclosure under Rule 26 of an expert opinion

15  on validity where someone has to establish by

16  clear and convincing evidence that each of the

17  elements of the claim are met.

18      I'm happy to answer any questions the

19  Court has about this.

20      THE COURT:  All right.  Thank you for the

21  defendants.

22      MR. HELMS:  Brandon Helms on behalf of

23  Sandoz.  And if it's okay with you, I will

24  address Dr. Sherman's portion and my co-counsel

25  will address Dr. Leibowitz.

1      THE COURT:  All right.

2      MR. HELMS:  The problem with plaintiffs'

3  motion is it seeks to explicitly set forth in

4  the report inherent anticipation.  I don't

5  think we're far off.

6      We agree with the characterization that

7  there are three primary references for the 404

8  patent, three primary references for the 029

9  patent for Dr. Sherman's, the only concern we

10  have on anticipation is there's also inherent

11  anticipation.

12      THE COURT:  There is what?

13      MR. HELMS:  Inherent anticipation.

14      THE COURT:  Okay.

15      MR. HELMS:  And under that doctrine the

16  reference discloses all of the elements.  But

17  some of them are inherent, and so that's

18  inherent in that reference you can use other

19  evidence to show that.

20      And so that's not clear in their motion

21  whether they aren't seeking to preclude us from

22  relying on those references that underlie his

23  opinion.  And so I still don't know what this

24  is -- that is.

25      So to the extent they're trying to

Page 66

1  preclude him from relying on references that
2  support or bolster his anticipation arguments,
3  we would oppose that because it's explicitly
4  set forth in his report.
5      As to obviousness, Dr. Sherman's report
6  was 80 pages. He has 21 pages on obviousness
7  and in which he discussed comprehensively a
8  number of prior references.
9      And they're seeking to limit him to seven
10 prior art references and eight combinations
11 from a section of his report that was titled
12 Representative Combinations.
13     And so the problem with that is they know
14 what he's going to be saying on these
15 references, they know exactly what Dr.
16 Sherman's opinions are and they had a chance to
17 depose him and ask him about them.
18     So there is no surprise at trial, there is
19 no possible prejudice. You know, we've given
20 them some main combinations that he may rely
21 upon, but to the extent they're trying to
22 exclude him from arguing about other opinions,
23 other references in his report, there's no
24 rational bases for that.
25     And in fact, the case law that they cited

Page 67

1  in the report doesn't support them. They cited
2  two main cases Carr versus Dee and Whit versus
3  Chesapeake.
4      In the Carr versus Dee case, the plaintiff
5  didn't provide Rule 26 disclosures of the
6  expert qualifications. They served the expert
7  report four months late, and the defendant
8  never had a chance to depose the expert. And
9  as I mentioned, that is not the case here.
10     The other case, Whit versus Chesapeake,
11 the plaintiff wanted another expert to opine on
12 650 references that were not disclosed in the
13 report. Again, that isn't the case here.
14     We do not intend for Dr. Sherman to opine
15 on any reference that was not disclosed in his
16 report. What plaintiffs are trying to do is
17 preclude him from making those arguments.
18     And one final point is that in an
19 obviousness case the -- besides explicit prior
20 art references, the Court, under KSR, may
21 consider the knowledge of skill in the art
22 on -- of a person.
23         THE COURT: Of a person what?
24         MR. HELMS: I'm sorry?
25         THE COURT: I just missed -- you were

Page 68

1  talking a little fast and I just missed the
2  last thing you said.
3          MR. HELMS: I'll go back a little.
4          THE COURT: Back up a little bit.
5          MR. HELMS: Sure. There was another thing
6  that besides putting forth explicit
7  combinations, KSR requires the Court to
8  consider the knowledge of skill in the art at
9  the time.
10     And to do that Dr. Sherman needs to
11 discuss other prior art references. And to the
12 extent that their motion is seeking to preclude
13 him from discussing those references and
14 showing what the level of skill in the art at
15 the time, it's improper.
16     There has not been any Rule 26 violation
17 here. We've given them comprehensive reports.
18 They know what our arguments are going to be.
19 They know what Dr. Sherman's thoughts are on
20 all these prior art references.
21     So there doesn't seem to be a reason to
22 grant their motion. That's what I have to say
23 about Dr. Sherman.
24         MR. ALUL: Andy Alul on behalf of Apotex.
25 I'm going to address the plaintiffs' motion

Page 69

1  dealing with Dr. Leibowitz.
2      Before I do that I would just ask the
3  Court to indulge me for a few seconds to
4  respond to Mr. Singer's comments on -- general
5  comments on obviousness and prior art of the
6  282 statement.
7      I generally don't have an objection with
8  Mr. Singer's description of anticipation and
9  obviousness. What I do object to strenuously
10 though is his suggestion that be somehow,
11 because we disclosed in our Interrogatory
12 responses or our section at 282 statement which
13 was served and not filed, that's probably why
14 you don't see it on the docket, that because we
15 disclosed hundreds of prior references there
16 and in our expert reports, we only focused on a
17 few, that somehow we, as parties, are precluded
18 from ever relying on those other references.
19     There was actually a recent Federal
20 Circuit case on this that's pretty much
21 directly on point, that says if your experts
22 come out and discuss certain references, sure,
23 they're limited to those.
24     But if the party discloses and relies on
25 more references in its Interrogatory responses

Page 70

1  and 282 notice, then the party, through trial
2  post -- pre- or post-trial briefing, or even
3  through fact witnesses, can also rely on those
4  other prior art representations to support
5  their invalidity case.
6      And so I just -- I guess what I'm just
7  trying to say, in summary here, is that we have
8  a general agreement with Mr. Singer and
9  plaintiffs that yes, the experts are sort of
10  limited to a universe of what they discuss and
11  properly disclosed in their reports.
12      But this doesn't mean that, as parties,
13  Apotex, Sandoz, and Hi-Tech were precluded from
14  relying on many of these other prior
15  references.
16      Through attorney argument, our pre- or
17  post-trial briefs, or even through fact
18  witnesses, just hypothetically speaking, from
19  relying on those to support our case. And
20  that's the argument we'd like to make there.
21      Regarding Dr. Leibowitz, we appreciate it
22  appears we've mooted an issue in their motion
23  with respect to his obviousness opinions. And
24  the only thing that I would say, Your Honor,
25  just to respond directly to their criticism of

Page 71

1  Dr. Leibowitz in his deposition testimony was
2  when they started asking about his obviousness
3  opinions at the end of a full seven-hour
4  deposition he was exhausted and they tried to
5  turn it into a memory game.
6      He did the best that he could. The report
7  was in front of them and just by virtue of the
8  fact that they've agreed that his obviousness
9  opinions are adequately disclosed in his expert
10  report, this is a nonissue now.
11      On the anticipation issue, Your Honor,
12  this -- he's got three pages in his report,
13  starting at page 15 through 18, where he
14  discusses in detail, he doesn't just identify
15  them, he discusses in detail five references
16  that disclose that each -- that in his opinion
17  each disclosed every element of claim 14 of the
18  404 patent.
19      And his anticipation argument, Your Honor,
20  is simple. There's a common thread for each
21  reference. It's -- each reference discloses
22  the use of the Bimatoprost on the eyelid for
23  eyelash growth. Very simple.
24      And then he does drop a footnote at the
25  end of that discussion that says see also this.

Page 72

1  The implication being this reference also does
2  the same thing here. So how they can feign
3  surprise over this one reference is beyond me.
4      Because his opinions with respect to
5  anticipation are really simple. These
6  references, each of them disclose using
7  Bimatoprost on the eye for hair growth. This
8  reference is only eight pages. This reference
9  they're complaining about is only eight pages
10  long.
11      And if they look at it, I'm sure they'll
12  see that it discloses the exact same thing, and
13  that's what his opinion is. So, Your Honor,
14  he's satisfied his under -- obligations under
15  Rule 26(A)(2).
16      We know of no duty on behalf of an expert
17  under Rule 26(A)(2) to not only discuss or
18  identify a reference, but also discuss it in
19  detail.
20      And there isn't a -- there is a minimum
21  sentence amount or something like that here.
22  He explained his anticipation thoroughly. He
23  talks about the references that support it and
24  he talks about an additional one in a footnote,
25  he says see this also.

Page 73

1      The implication being my opinion applies
2  to this reference as well. That's that.
3      THE COURT: Okay.
4      MR. ALUL: Thank you, Your Honor.
5      THE COURT: Thank you. Rebuttal?
6      MR. SINGER: Let me pick up where counsel
7  left off with the Leibowitz, the reference.
8  I've read the reference that they -- the see
9  also, and that's why we're here complaining
10  about it.
11      It doesn't talk about the Bimatoprost and
12  eyelash growth. It talks about --
13      THE COURT: I'm sorry?
14      MR. SINGER: It doesn't talk about eyelash
15  growth, that's the issue. He goes through and,
16  as you would expect, I mean it's a clear and
17  convincing evidentiary burden.
18      Dr. Leibowitz goes through the opinions he
19  has on the five references he discusses in
20  detail. And then he says see also, and he
21  identifies a publication and he point -- Your
22  Honor, he points to in each of those five
23  references where we can find what he's relying
24  on.
25      So we don't have to hunt and peck and find

Page 74

1  in an article what pages or information he's
2  relying on.
3      In the see also Woodward reference, it's
4  eight pages, as counsel said.  It doesn't tell
5  us where in there to look.  Maybe there is
6  something there that we've missed that he's
7  relying on and it's not there, as far as we can
8  tell.
9      And again, the reason we have Rule 26 is
10  that for an expert to say the facts and bases
11  of his opinion.  Not just to conclusory say
12  that this reference anticipates.  That's
13  essentially what he does.
14      I hear you.  The implication is that it
15  says the same thing as these other references.
16  But when I read it, I don't see that
17  information.  So we're left to guess as to what
18  Dr. Leibowitz's opinion is.
19      With respect to -- so that's really my
20  response on Dr. Leibowitz.  It doesn't make any
21  sense to us.  That's why we're here complaining
22  about it.  If it was exactly the same as these
23  other references, I think we could live with
24  it.
25      With respect to Dr. Sherman, what I heard

Page 75

1  is that it's okay in an expert report to
2  disclose representative opinions and that we
3  are supposed to figure out from all the other
4  references disclosed what combinations of
5  references Dr. Sherman is going to present at
6  trial.
7      That's just not fair.  And the notion that
8  at a deposition we could inquire as to every
9  single combination is, in a word, unfeasible.
10  As I said, there are hundreds -- I think we did
11  the math, there are actually thousands of
12  combinations based on the categories he
13  described these references.
14      And we would have been at his deposition
15  for days trying to get him through every single
16  combination that was possible.  So we think the
17  Court should limit him to the combinations he's
18  actually identified in his expert report.
19      We are not trying to bar him from talking
20  about references that he's actually disclosed.
21  We're simply saying that you can't pick a
22  reference you disclosed on page 10, combine it
23  with a reference you've disclosed on page 40,
24  simply because you reserve the right to do so,
25  without explaining how those two things should

Page 76

1  be combined to allegedly render the patent
2  valid.
3      That's really it.  Just a little fairness
4  on what we're going to have at trial.
5  Otherwise, we're going to have a very, very
6  lengthy cross-examination of Dr. Sherman.  And
7  on direct we're going to have him point, it's
8  going to be a very inefficient process with Dr.
9  Sherman on the stand if this goes forward this
10  way.
11      MR. HELMS:  Your Honor, may I briefly
12  respond to that point?
13      THE COURT:  Okay.
14      MR. HELMS:  Counsel says it is unfair to
15  discuss these references and then combine them
16  at trial, but they haven't pointed to any case
17  law indicating that it's unfair.
18      They haven't shown us Rule 26 requires us
19  to put every single combination together.  And
20  like he said, that might have taken 2,000 pages
21  if we wanted to go through every single detail
22  what he's talking about, which would have also
23  been unfeasible.
24      We don't think this will be an issue that
25  comes up at trial.  If they think that at trial

Page 77

1  we're letting a combination that they didn't
2  have any knowledge about that, that would be
3  the appropriate time to address this.
4      But as it stands right now, they have all
5  of our information, they can't possibly be
6  surprised if he just -- if he talks about
7  references that he comprehensively discussed
8  in his report.  And it should be left at that.
9  Thank you, Your Honor.
10      THE COURT:  Okay.
11      MR. ALUL:  Your Honor, just one last word
12  on Dr. Leibowitz.  And I'll be brief.  So it's
13  not my understanding of plaintiffs' sole
14  complaint with respect to the see Woodward
15  reference at the end of Dr. Leibowitz's
16  anticipation discussion that well, we looked at
17  the reference and we don't see anything about
18  Bimatoprost growing eyelashes.  We see
19  Bimatoprost, but it doesn't grow eyelashes.
20      Your Honor, we submit that's something
21  more appropriate for cross-examination.  And in
22  fact, it's my recollection that they never even
23  asked Dr. Leibowitz about this in his
24  deposition.
25      If they were so concerned about this

Page 78

1  reference and its implications to the validity
2  of their patent, why didn't they even ask him
3  about it at his deposition? And the concerns
4  they have could be raised and dealt with in
5  three or four minutes on cross-examination at
6  trial.
7      That shouldn't warrant -- their criticism
8  shouldn't warrant entirely not allowing him to
9  opine on their reference whatsoever when this
10  is disclosed in here.
11      They can see it's in the footnote. They
12  can see he's adequately discussed his
13  anticipation opinions with respect to five
14  other references.
15      Their sole complaint is we don't think it
16  really supports his opinion. That's a
17  cross-examination issue. Thank you, Your
18  Honor.
19      MR. SINGER: May I make one last point,
20  Your Honor?
21      THE COURT: You may.
22      MR. SINGER: That's not a
23  cross-examination issue because we don't know
24  what to cross-examine him on. What you will
25  see, Your Honor, at trial is the parties will

Page 79

1  put up a lot of prior art references. And
2  defendants and plaintiffs will do them for
3  their own particular purposes, either to
4  explain the technology or, in defendants' case,
5  try to render the patents invalid.
6      You will see they will focus on certain
7  portions of them, as is natural. The Court
8  construed the claims, the Court focused on
9  certain portions of what had lengthy -- as to
10  the claims.
11      The parties will do the same thing in
12  trying to teach the Court about these prior art
13  references. They will say look at page 300,
14  lines 1 to 30. And that's the key part of this
15  reference, that according to them, will render
16  the patent invalid.
17      Dr. Leibowitz does that for those other
18  five references. He explains to us, so we
19  could examine him at his deposition, what he's
20  relying on.
21      A citation says see also an article is
22  not -- that's not disclosing the facts and
23  bases of an opinion under Rule 26 for purposes
24  of rendering a patent invalid. It just isn't.
25  We don't know what he's going to rely on, as I

Page 80

1  said.
2      THE COURT: As you said, that's key for
3  I'm starting to repeat myself.
4      MR. SINGER: I will sit down. That's
5  enough, Your Honor.
6      THE COURT: All right. Thank you. All
7  right. Well, it seems to me that I can deal
8  with the evidence issues raised here better at
9  trial. So when I have a little bit more
10  context for these issues.
11      And it also seems possible that they won't
12  even come up. So being a fan generally of not
13  deciding things that I don't have to, I am
14  going to deny the Motions in Limine.
15      But that doesn't mean you shouldn't raise
16  your objections during these experts' testimony
17  if they in fact start testifying about things
18  that you think were not adequately disclosed.
19      Okay. So it's denied to the extent you
20  want a pretrial ruling on it, and that's
21  without prejudice to raise it at trial when the
22  witnesses actually testify.
23      Okay. Can we do anything else
24  productively today?
25      (No response.)

Page 81

1      THE COURT: No? All right. Everybody's
2  moving out of discovery mode and into trial
3  mode. Okay. Good. I'm getting a few nods.
4      All right. I can do a scheduling order
5  covering the matters that we worked out at the
6  beginning part of the hearing if you all want
7  me to.
8      That would be helpful? Okay. I will.
9  I'm getting some nods yes. It shouldn't be
10  very long. And if I forget to put anything in
11  there, whatever we said here in court still
12  goes.
13      That's just my forgetting to write
14  something down. We all have a little bit of
15  help on that. Okay. All right. Well, I'm
16  sure we're going to have an interesting
17  experience together.
18      I appreciate you all's preparation on
19  this. And you all have been very clear so far
20  in helping me understand this, so I won't say
21  I'm looking forward to it, but I'm sure -- I
22  actually have an interest -- I'm interested in
23  a lot of things and I'm sure you all are going
24  to make many parts of this interesting.
25      So I know not everything can be

**Page 82**

1  interesting, so I'm not going to hold you to
2  that standard.  All right.  So I will see you
3  back here in what, one, two, three and a half
4  weeks, roughly.  All right.
5        And if you do settle it, which I'm not
6  expecting, but particularly because I'm not
7  expecting it, if you do settle it let me know
8  immediately so I can stop working on it.
9        But otherwise, I'll just see you here on
10 November 5th and look for all of your trial
11 briefs and such when they become due.  Yes,
12 sir.
13       MR. McDEVITT:  Your Honor, if the parties
14 have matters that need the Court's attention
15 before trial starts, how would you like for us
16 to let you know about that?
17       THE COURT:  Well, you know, you can get on
18 the phone with the clerk together, or I mean,
19 one of you from each side and tell her what it
20 is.  Possibly we can do it -- that's the
21 easiest way.
22       Especially if it's something logistical,
23 she probably actually can answer it without me.
24 But if you really have something come up, you
25 can call her, talk to Miss Sanders, you can --

**Page 83**

1  it's easiest if you -- you can send her an
2  e-mail if she's receiving those.
3        MR. McDEVITT:  It's all right if we
4  communicate directly with the clerk about
5  matters?
6        THE COURT:  You can communicate with the
7  clerk.  Not trying to argue the merits or
8  anything to her, but you can communicate with
9  her about the best way to communicate with me.
10 Because I appreciate not everything requires a
11 motion and a brief and 21 days to respond.
12       We don't really have that much time.  I
13 hope you won't need me, but we can always have
14 a telephone conference if -- with limited
15 participants.  I find those difficult with a
16 lot of people.  But if we have to.
17       But I will say, I have -- I'm going to be
18 in Richmond the week of October 22nd with the
19 Fourth Circuit and not really available, and I
20 have a bunch of criminal sentencings before, a
21 week before this trial starts, and so I have
22 time to work on this and will be working on it.
23       But I don't have a lot of flexibility
24 about it because of my other court obligations,
25 so I hope you don't need me.  But if you come

**Page 84**

1  talk to Miss Sanders and she'll -- we'll figure
2  out the best way to deal with it, depending on
3  the nature of the problem.
4        MR. McDEVITT:  Thank you, Your Honor.
5        THE COURT:  All right.  Anything else?
6  And, Mr. Fox, you can tell Miss Broom that you
7  got an A.
8        MR. FOX:  Thank you, Your Honor.  I
9  appreciate that.
10       THE COURT:  All right.  We're adjourned.
11       (Hearing concluded at 11:05 a.m.)

**Page 85**

1  STATE OF NORTH CAROLINA
   COUNTY OF GUILFORD
2
                    REPORTER'S CERTIFICATE
3
4        I, Beverly J. Gramm, Registered
5  Professional Reporter, certify that the foregoing
6  proceedings were taken before me at the time and
7  place therein set forth;
8        That all objections and statements made at
9  the time of the proceedings were recorded
10 stenographically by me and were thereafter
11 transcribed;
12       That the foregoing is a true and correct
13 transcript of my shorthand notes taken.  I further
14 certify that I am not a relative or employee of any
15 attorney or the parties, nor financially interested
16 in the action.
17       I declare under penalty of perjury under
18 the laws of North Carolina that the foregoing is
19 true and correct.
20       This the 12th day of October, 2012.
21
22       *Beverly J. Gramm*
23 BEVERLY J. GRAMM, RPR
   Notary Public No.  200811600140
24 My Commission Expires:  April 23, 2013
25

Case 1:11-cv-00650-CCE-LPA  Document 82  Filed 10/19/12  Page 22 of 49

1    STATE OF NORTH CAROLINA
     COUNTY OF GUILFORD
2
                    REPORTER'S CERTIFICATE
3

4          I, Beverly J. Gramm, Registered

5    Professional Reporter, certify that the foregoing

6    proceedings were taken before me at the time and

7    place therein set forth;

8          That all objections and statements made at

9    the time of the proceedings were recorded

10   stenographically by me and were thereafter

11   transcribed;

12         That the foregoing is a true and correct

13   transcript of my shorthand notes taken.  I further

14   certify that I am not a relative or employee of any

15   attorney or the parties, nor financially interested

16   in the action.

17         I declare under penalty of perjury under

18   the laws of North Carolina that the foregoing is

19   true and correct.

20         This the 12th day of October, 2012.

21

22   *B enely   J.  Gramm*

23   BEVERLY J. GRAMM, RPR
     Notary Public No.  200811600140
24   My Commission Expires:  April 23, 2013

25

**0**

029  65:8

**1**

1  14:15
79:14

10  75:22

102  58:15,
16

112  20:2

11:05  84:11

12  56:1

120,000
11:15

12:30  22:14
23:6

13th  23:23
24:9 25:15
27:23

14  71:17

15  71:13

15th  37:6,
19 39:2

18  63:14
64:12
71:13

19th  23:23
24:14
28:19
38:20
39:5,7

42:1

1:30  22:18
23:6

1:40  22:21

**2**

2  14:15
22:20

2,000  76:20

20  24:21
27:16

2011  51:11

20th  23:24
24:14
28:19

21  66:6
83:11

22nd  57:14
83:18

24  31:20
46:24

26  32:21
38:18 54:5
62:18
64:14 67:5
68:16 74:9
76:18
79:23

26(A)(2)
72:15,17

26(A)(3)
14:2 34:15
37:25

42:16
46:10

26(A)(3)(B)
62:3

26th  10:8,
20

282  69:6,12
70:1

**3**

3  14:15
17:11

30  27:11,16
28:2 29:1
44:7,21
79:14

300  79:13

33  64:12

35  58:15

**4**

40  14:20
44:7,21
64:6 75:23

403  35:23

404  65:7
71:18

48  31:21

4:30  22:19
23:6

4:45  22:21

**5**

5  22:21

50  14:20
15:1

518  60:7

5th  23:19
82:10

**6**

650  67:12

6:30  23:8

**7**

700  11:12
12:3
14:18,24
43:4

**8**

8  64:5

80  66:6

**9**

9:30  22:14
23:6

**A**

a.m.  84:11

abbreviated
35:2

**absolutely**
  20:3,11
  23:4 28:24

**acceptable**
  35:5

**accurate**
  16:11

**Act** 58:15

**actual** 13:3
  51:20

**add** 46:8

**added** 63:12

**addition**
  51:20

**additional**
  45:18
  50:22
  63:13
  72:24

**address** 11:8
  46:17 48:4
  49:20 50:3
  59:25
  64:24,
  68:25 77:3

**addressed**
  39:25
  46:16

**adequately**
  71:9 78:12
  80:18

**adjourned**
  84:10

**admissibility**
  38:19

**advance** 9:21
  14:19 18:3
  31:21
  46:24
  47:15

**advantage**
  53:24

**advise** 9:16

**advised** 8:12

**affect** 13:11

**afternoon**
  49:3

**agree** 16:3
  24:25
  30:23
  31:2,10
  32:7,15
  41:16 46:5
  47:21 48:2
  65:6

**agreeable**
  31:3

**agreed** 37:19
  47:23,24,
  25 63:12
  71:8

**agreement**
  10:1 31:20
  60:1,18
  70:8

**ahead** 21:14
  39:20

**all's** 81:18

**alleged** 49:4

**allegedly**
  76:1

**Allen** 8:3,4

**allotted**
  34:21

**allowed**
  31:18
  42:20
  61:17

**allowing**
  78:8

**Alul** 7:19,
  23 8:1
  13:24
  14:11 15:6
  16:1
  17:13,22
  19:8,15,21
  20:18,23
  21:3,6,22
  22:1,5
  23:4 24:3,
  25 26:2
  27:13
  28:5,24
  31:10
  34:12 36:6
  37:17,23
  42:13
  44:23 46:5
  47:16
  48:18 52:6
  55:21

  57:18
  68:24 73:4
  77:11

**ambush** 19:4

**amenable**
  30:23

**amount** 36:12
  72:21

**analyzing**
  37:25

**ANDA** 50:5,
  6,7,9,10,
  14,15,23
  52:8,14,23
  53:16
  54:14,15,
  21,25

**Andy** 7:19
  68:24

**anticipate**
  21:22
  22:13 24:3
  26:2,7
  34:18

**anticipated**
  59:13

**anticipates**
  21:21
  58:20
  74:12

**anticipating**
  21:11 22:6
  33:4

**anticipation**

58:8,14
59:6,12
60:17,19
61:1 63:8
65:4,10,
11,13 66:2
69:8
71:11,19
72:5,22
77:16
78:13

**anymore**
40:25

**anyone's**
25:8

**apologize**
8:23

**Apotex** 7:18
13:25
51:1,10
52:5,22
68:24
70:13

**appears** 38:3
70:22

**applicant**
52:11,12

**application**
50:16
51:21

**applies** 73:1

**appreciative**
55:3

**approach**

25:21
33:10
52:13

**approval**
53:22

**argue** 63:4
83:7

**arguing**
64:10
66:22

**argument**
27:6,18
28:4 62:14
70:16,20
71:19

**arguments**
27:22
28:14 29:2
57:8 60:9
66:2 67:17
68:18

**arise** 14:16

**art** 66:10
67:20,21
68:8,11,
14,20 69:5
70:4 79:1,
12

**article** 74:1
79:21

**Asheville**
6:21

**aspect** 54:2,
3

**asserting**
53:12

**assertion**
53:7,8

**assume** 19:1
29:14 44:2

**assuming**
9:13 20:12
45:23 49:8

**assumption**
46:23

**assurance**
54:11,13

**assure** 15:6

**assured** 54:1

**attached**
42:22

**attention**
82:14

**attorney**
49:11
70:16

**attorneys**
43:6

**AUDIENCE** 6:2

**authorities**
51:18

**aware** 47:15

—————————

——— B ———

**back** 15:20
22:10,12,

18 27:21
28:7,22
32:4 41:5
50:23
52:20
68:3,4
82:3

**background**
58:12
59:15

**bad** 25:8

**bar** 75:19

**based** 54:20
59:10
63:20
75:12

**bases** 62:4,
66:24
74:10
79:23

**basis** 54:13

**bear** 53:16

**beginning**
19:10 81:6

**behalf** 7:18
8:7,11
13:24
64:22
68:24
72:16

**bench** 28:14
40:15

**bestow** 53:23

Betsy  7:13

big  11:24
  20:10  41:1

bigger  40:14

Bimatoprost
  71:22  72:7
  73:11
  77:18,19

binder  18:18

binders
  18:8,15
  19:16

bit  23:9
  27:1  29:16
  38:11
  44:21  55:4
  59:17  68:4
  80:9  81:14

bolster  66:2

book  12:10
  57:6

books  24:20

box  16:19
  41:2,9

brand  56:5

Brandon  8:8
  64:22

break  22:15,
  20  23:3

briefing
  55:23  70:2

briefly  54:8
  76:11

briefs  27:20
  29:6,22
  70:17
  82:11

bring  38:8

Brooks  7:19

Broom  8:10,
  11,17,22
  84:6

bunch  83:20

burden
  20:21,24
  21:2,8
  51:15
  73:17

business
  30:25
  32:9,12
  53:24

_____

_____
**C**
_____

California
  7:6

call  34:14
  82:25

calls  9:8

candid  24:8

care  40:22
  41:12

Carr  67:2,4

case  9:7
  13:10
  21:11,17

22:7  24:11
  27:1  30:3
  32:13
  33:23
  35:8,9
  45:13  50:5
  51:14,20
  52:18
  53:12,18
  54:3,4,14,
  25  56:9
  66:25
  67:4,9,10,
  13,19
  69:20
  70:5,19
  76:16  79:4

cases  9:19
  24:20  35:8
  67:2

categorical
  53:7

categorically
  56:15

categories
  75:12

caught  26:14

caused
  12:20,23

CD  12:7

cetera  61:5

chance  28:15
  29:20
  66:16  67:8

characterization
  65:6

characterize
  52:7

chart  47:13

cheapest
  41:17

checked
  11:13

Chesapeake
  67:3,10

chief  22:7
  35:10

chunk  11:21,
  24

chunks  20:10

circuit
  55:23
  69:20
  83:19

citation
  63:17
  79:21

cited  38:3
  66:25  67:1

citing  63:16

claim  58:23
  59:2  71:17

claims  53:12
  56:10
  79:8,10

clarification
  47:17

clarify
  19:24

clear  58:18
  64:16
  65:20
  73:16
  81:19

clerk  6:3
  10:16,22
  12:23
  13:2,20
  14:8 15:17
  16:6 17:17
  19:11,12,
  14 41:7,17
  82:18
  83:4,7

client  52:17

clock  25:19

close  9:20
  14:24 16:6
  30:22,25
  32:8,9,12

closer  15:1

closing
  27:18,22
  28:3,8,14
  29:1 39:11
  46:21

closings
  28:7

co-counsel
  64:24

cold  6:4,6

combination
  61:7,16,18
  64:8 75:9,
  16 76:19
  77:1

combinations
  61:24
  66:10,12,
  20 68:7
  75:4,12,17

combine  59:3
  61:25 64:5
  75:22
  76:15

combined
  59:8 61:4
  76:1

comment
  60:20

comments
  54:14,18
  69:4,5

common  71:20

communicate
  83:4,6,8,9

communications
  56:7

company  52:9

Compel  55:7,
  12

competitive
  53:24
  56:18

complaining
  73:9 74:21

complaint
  77:14
  78:15

completely
  46:5

comprehensive
  42:17,18
  68:17

comprehensively
  77:7

concern  14:1
  16:21
  34:12
  35:13
  37:24
  39:13
  44:23 46:9
  54:2 65:9

concerned
  12:12
  56:13
  77:25

concerns
  56:18 58:8
  78:3

concluded
  84:11

concludes
  48:12

conclusions
  29:9,21

conclusory

53:8 74:11

condensed
  35:4

confer  10:3
  15:16

conference
  39:16
  83:14

confidential
  9:5,9,12

confirm  51:5

confused
  29:3

consideration
  22:10

considered
  59:10

consists
  11:22

consonants
  7:21

constraints
  23:18

construed
  79:8

contemplate
  42:15
  43:24

contend
  60:3,8

context
  55:19
  80:10

**control**
  38:5,7,15

**convincing**
  58:18
  64:16
  73:17

**copies**
  10:16,
  11:22,23
  12:13 13:1
  14:8,12

**copy**  13:2,7
  17:16,19
  19:13
  33:17

**correct**
  16:1,10
  17:5 20:22
  21:3

**correspondence**
  50:11,12,
  17,18
  51:4,6,16
  52:1,3,7,
  10,12,15,
  22 53:15,
  21 54:2,
  22,24 56:3

**costs**  40:25

**counsel**  7:7
  8:5 35:24
  47:12,18
  56:20 73:6
  74:4 76:14

**counter**

37:6,19
39:2,4

**counting**
  43:20

**couple**
  30:11,18
  48:4

**court**  6:1,3,
  19 7:9,16,
  22,24 8:2,
  12,16,19,
  23 9:9,10
  11:6,10,16
  12:15
  13:20
  14:10,14
  15:6,9,12,
  19,25
  16:12,24
  17:4,8,15,
  25 18:9,
  11,19
  19:5,9,18,
  22 20:3,5,
  19 21:1,4,
  10,14,24
  22:2,12
  23:1,5,12,
  14,22
  24:12,15,
  18 25:1,5,
  22 26:9,23
  27:14,17
  28:12,17,
  23,25
  29:10,13
  30:15

31:24
32:6,19
33:1,19,
22,24
34:3,9,11
35:6,10,
16,22
36:4,7,23
37:8,13,22
38:9,10,17
39:8,19
40:6,13,24
41:11
42:9,12,24
43:6,23
44:24
45:17
46:3,14
47:1,6,11,
17,21,24
48:7,13,
16,19,25
49:12,19,
22,23 50:4
51:19 52:5
54:7,10
55:2,9,11,
17 56:16
57:5,20
58:2 60:5
64:19,20
65:1,12,14
67:20,23,
25 68:4,7
73:3,5,13
75:17
76:13
77:10

78:21
79:7,8,12
80:2,6
81:1,11
82:17
83:6,24
84:5,10

**Court's**
  43:18
  82:14

**courtesy**
  45:20

**courtroom**
  9:20 36:9

**courts**  9:17

**covered**
  37:14 40:2

**covering**
  81:5

**crazy**  20:6
  43:3

**create**  6:8

**created**
  47:12

**criminal**
  83:20

**criticism**
  70:25 78:7

**cross**  18:8
  20:16

**cross-examination**
  18:1,5,10,
  15 26:11,

15,17 76:6
77:21
78:5,17,23

cross-examine
78:24

cull 35:19

culling
36:25

——————————————
D
——————————————

Darrell 7:18

date 30:5
31:20
49:4,13

dates 24:17
30:5

day 19:17
22:23
23:13
31:1,16
49:5

day's 16:7

days 13:15
24:2 25:15
31:5 32:2
34:21
75:15
83:11

deadline
10:5 41:24
44:11
45:15
46:11
47:22

deal 9:16
43:21
54:23 80:7
84:2

dealing 69:1

dealt 78:4

December
51:11

deciding
80:13

decision
55:20
57:16

Dee 67:2,4

defendant
11:12 51:1
67:7

defendants
13:20,25
20:13,21,
22 24:4
49:7
50:12,18,
20,25
51:24 58:9
60:2 61:9
63:1,12
64:21 79:2

defendants'
13:22 25:7
34:24 49:3
50:5,9
51:22 79:4

defense

48:17,18

defenses
58:8,13

demonstrative
39:10
46:20

denied 80:19

deny 80:14

depending
29:3 33:15
84:2

depends
44:17

depose 66:17
67:8

deposition
32:22
33:4,7,17
35:11 37:4
38:19
62:22
71:1,4
75:8,14
77:24 78:3
79:19

depositions
33:8,11,
13,22
34:24
35:19,25

description
69:8

deserve 54:5

designated
33:13

designation
37:4 56:21

designations
32:23
37:6,20,21
38:19
39:2,5

detail
71:14,15
72:19
73:20
76:21

develop
13:16

developing
14:4 31:11
34:16

develops
45:22

differ 58:14

difference
58:25

difficult
41:14
83:15

diligence
52:16

direct 26:13
31:15,17
76:7

directly
69:21

70:25 83:4

**disagree**
56:6

**disagreement**
59:19,23
61:3 63:6

**disclose**
32:22
71:16 72:6
75:2

**disclosed**
44:10
63:20,22
67:12,15
69:11,15
70:11
71:9,17
75:4,20,
22,23
78:10
80:18

**discloses**
65:16
69:24
71:21
72:12

**disclosing**
79:22

**disclosure**
43:5 47:18
61:15
62:17
64:1,14

**disclosures**
14:3 31:13

34:15
37:25 67:5

**discover**
44:12
52:25

**discovery**
48:6,23
50:1 60:2,
12 81:2

**discuss**
56:17
68:11
69:22
70:10
72:17,18
76:15

**discussed**
16:3 61:12
63:23 77:7
78:12

**discusses**
71:14,15
73:19

**discussing**
68:13

**discussion**
10:25
15:18
48:21
49:14
63:18
71:25
77:16

**dispute**
59:16

**docket**   69:14

**doctrine**
65:15

**document**
20:8

**documents**
18:4 44:21
52:18

**double**   43:9

**doubt**   9:11

**Doug**   7:7,14

**downstairs**
8:13

**dozen**   61:21

**drives**   20:6

**drop**   71:24

**drug**   52:9

**due**   52:16
82:11

**duh**   45:8

**Duke**   7:7

**Dunn**   7:4

**duplicate**
17:6 20:4

**duty**   72:16

_____

**E**

_____

**e-mail**   83:2

**earlier**
12:18
22:22

**docket**   31:11

**easier**   19:19
41:1

**easiest**
41:16
82:21 83:1

**easy**   59:5

**eat**   34:20
35:15

**educated**
26:25

**efficiencies**
25:22

**efficient**
32:1 37:7

**electronic**
13:2 14:8
17:16,18
40:11

**element**
71:17

**elements**
58:22 59:2
64:17
65:16

**encourage**
10:3,9
56:25
57:22

**end**   20:9
22:11,23
26:4 28:3
30:6 33:2
35:9 42:6

71:3,25
77:15

**enter** 33:20

**entered**
10:12,14
11:20

**entire** 33:8

**equal** 25:16,
25 26:3,8

**erroneous**
61:10

**essentially**
22:5 27:15
46:10
63:15 64:3
74:13

**establish**
64:15

**everybody's**
20:16 24:6
32:20 81:1

**everyday**
22:14

**evidence**
13:6 20:15
21:25 22:3
25:17
27:22
29:14
54:25
58:18
64:16
65:19 80:8

**evidentiary**

73:17

**exact** 72:12

**examination**
31:15,17

**examinations**
14:13

**examine** 12:9
17:1,24
79:19

**examining**
20:14

**exchange**
10:13
37:19
39:12
45:18 48:1
51:10

**exchanging**
19:19

**excited**
44:24

**exclude**
66:22

**exhausted**
71:4

**exhibit**
10:14,17
13:3,17
14:15
16:20
17:6,11
18:17
19:13,16
41:22,25

42:15,18,
21 43:24
46:7 60:11

**exhibits**
10:16,21
11:3,5,12,
14 12:6,8,
19,22,24
13:12
14:3,9,12,
18,21,24
15:8,21
16:7,14
17:3 19:11
20:1 31:16
38:20
43:10,18
44:4,7,9
45:11,18
46:1,7,20
47:8

**exists** 53:1

**expect** 28:13
30:17
73:16

**expectation**
33:12

**expecting**
82:6,7

**experience**
12:18 52:2
81:17

**expert** 60:11
64:14
67:6,8,11

69:16 71:9
72:16
74:10
75:1,18

**experts**
49:7,9
58:10
69:21 70:9

**experts'**
80:16

**explain** 79:4

**explained**
52:21
53:14
72:22

**explaining**
75:25

**explains**
79:18

**explicit**
67:19 68:6

**explicitly**
66:3

**expressed**
39:13

**extent** 38:12
45:24
65:25
66:21
68:12
80:19

**extra** 46:1

**eye** 72:7

eyelash
  71:23
  73:12,14

eyelashes
  77:18,19

eyelid  71:22

eyes  56:21

———————————

**F**

———————————

facilitate
  18:25

fact  29:9,
  21 36:25
  53:10
  66:25
  70:3,17
  71:8 77:22
  80:17

facts  62:4
  74:10
  79:22

fair  25:25
  26:10
  62:13 75:7

fairly  27:7

fairness
  76:3

faith  25:8
  43:5,21

fan  80:12

fast  57:12,
  20 68:1

FDA  11:22
  50:6,9,22
  51:10
  52:3,7,10,
  13,22,23
  53:15
  54:2,14,
  18,24
  56:3,7

FDA'S  51:21

Federal
  69:19

feel  41:21,
  23

feelings
  22:19

feign  72:2

figure  14:5
  62:12 75:3
  84:1

Filarski
  8:6,7

file  17:16
  27:20
  29:24 33:1
  38:18
  50:5,9
  55:11,12,
  13 56:24

filed  10:19
  39:22,23
  49:1, 60:5
  69:13

files  10:5

filing  11:22
  29:8

filings
  11:23

final  10:20
  67:18

find  16:18
  27:7 40:22
  43:12,19
  73:23,25
  83:15

findings
  29:9,20,21

fine  8:19
  16:15
  19:2,5
  20:11
  30:13
  31:22
  37:17,21
  40:6 43:16
  46:8 47:4,
  9,25 48:2

finish  23:24
  24:7,9
  27:22

firm  6:21,
  24 7:4

Fish  6:23
  7:15

fit  16:9

Flanagan
  7:13

flexibility

83:23

flight  23:8

focus  21:15
  79:6

focused
  69:16 79:8

folders
  16:20

folks  7:3

fool  7:13

footnote
  63:14,21
  64:12
  72:24
  78:11

forget  81:10

forgetting
  81:13

forgot  30:21

forward  22:9
  51:15 76:9
  81:21

found  43:7

Fourth  83:19

Fox  8:13,15
  84:6,8

fresh  30:10

Friday  23:20
  32:10
  47:3,17,23
  55:13 60:6

front 16:16
  18:23 41:2
  71:7

Fruth 7:17,
  18 19:24
  20:4

full 36:1
  71:3

fulsome
  62:24

fun 19:3

_____

        G
_____

game 71:5

gauge 53:21

gave 51:2

general 46:3
  69:4 70:8

generally
  9:17 69:7
  80:12

germane 34:2

Gibson 7:4

give 9:21
  10:15 13:2
  29:19,25
  30:9 35:19
  36:20
  38:10
  45:19
  46:18
  50:22 57:1

giving 31:2
  32:16
  35:25
  38:23
  45:17
  50:13

glad 58:4

Goldstein
  7:12

good 6:1,2
  7:5,17,23
  8:3,6,9,
  10,15,16
  11:21 15:9
  17:15
  19:22
  24:15 27:1
  32:21
  33:24 37:7
  38:25
  39:1,19
  42:22
  43:5,19,21
  46:14
  52:19
  57:16
  58:24
  59:20 81:3

grant 68:22

great 7:16
  19:18,22
  20:19 23:5
  27:12
  36:23 39:8
  43:15

grow 77:19

growing
  77:18

growth 71:23
  72:7
  73:12,15

guess 6:15
  24:6 35:8
  37:13
  38:20 70:6
  74:17

guidance
  42:2 50:13
  56:12 57:1

_____

        H
_____

hair 72:7

half 23:14
  82:3

hand 12:6,8
  17:2 25:10
  27:1 33:16
  34:7 35:6

handing
  16:14
  17:23 18:8
  35:1

handle 60:21

hands 53:20

happen 18:19

happy 12:25
  28:19
  32:6,15

36:4,18
  49:20
  56:23
  64:18

hard 13:6
  14:12

hate 14:25

head 38:2
  49:11

heads 38:23

hear 49:8
  58:4 74:14

heard 53:5,6
  74:25

hearing 81:6
  84:11

hearings
  50:4

heat 6:8

Heather 7:11

held 15:18

Helms 8:8,9
  64:22
  65:2,13,15
  67:24
  68:3,5
  76:11,14

helpful
  10:11,23
  27:8 36:2
  39:4 57:24
  81:8

helping
  81:20

helps  16:3

Hi-tech
  8:11,18
  50:25
  70:13

highlighted
  35:3

Hill  8:4,6

hold  82:1

holding
  24:17

Honor  6:2
  7:1,5,17,
  23 8:3,7,
  9,10,15
  11:3 13:9,
  24 15:7
  16:1 17:22
  18:10,13
  19:7,8,21,
  24 20:18,
  23 21:3,7,
  13,23 22:6
  24:4,5,25
  25:4 26:2,
  3,22 27:14
  28:6,11
  29:5 30:14
  31:10,23
  33:10
  34:12
  37:15,18,
  24 39:6

40:5,23
42:13,25
44:23
45:14
46:6,18
47:16
48:3,12,24
49:18 50:3
52:18,25
53:5,10,
20,24
54:6,9
55:16,22
57:4,18
58:6 61:22
63:24 64:4
70:24
71:11,19
72:13
73:4,22
76:11
77:9,11,20
78:18,20,
25 80:5
82:13
84:4,8

hope  6:9
  38:23 47:2
  83:13,25

hopeful
  24:6,11
  59:21

hour  22:18

hours  23:14
  24:21
  31:20,21
  46:24

housekeeping
  39:25
  48:9,12,
  16,21

hundreds
  60:3 61:24
  69:15
  75:10

hunt  73:25

hypothetically
  70:18

hypotheticals
  54:23

_____
         I
_____

idea  16:2
  34:17
  42:20
  54:12

identification
  32:2

identified
  13:14 15:4
  16:8 44:9,
  12 60:2
  75:18

identifies
  73:21

identify
  47:6,11
  55:24
  71:14
  72:18

immediately
  82:8

implication
  73:1 74:14

implications
  78:1

important
  31:6 36:14

impose  25:1

imposing
  26:5

improper
  60:23
  68:15

inadequate
  64:2

inadvertently
  25:9

include  29:7

included
  43:12

includes
  26:10

including
  48:5

indicating
  76:17

indulge  69:3

inefficient
  76:8

informally
  37:18

information
  11:19
  50:13
  51:1,9
  53:2 54:15
  74:1,17
  77:5

infringement
  20:25
  21:5,7,9,
  16,18 22:6
  51:15
  53:16
  54:3,16
  56:8,9

inherent
  65:4,10,
  13,17,18

initial
  20:21
  51:20

initially
  52:9

inquire   42:9
  75:8

instance
  11:21

intend   24:8
  34:23 35:1
  67:14

intention
  36:6

interest
  81:22

interested
  28:8 81:22

interesting
  50:7
  81:16,24
  82:1

Interrogatory
  69:11,25

introduce
  8:5 14:17,
  20,24

introducing
  15:3,7

invalid
  59:10
  79:5,16,24

invalidity
  21:2,17
  22:4,8
  53:17 54:4
  70:5

invention
  49:4,12

involving
  56:9

issue   16:13
  42:5 48:23
  50:1 60:16
  63:5 70:22
  71:11
  73:15
  76:24
  78:17,23

issues   40:8

48:6
  50:10,11
  53:17
  80:8,10

                J

Jeff   7:3

Jonathan
  6:23

Judge   8:12,
  20

judgment
  29:8

jury   41:2,
  13

                K

keeping
  12:21,24
  28:6

key   79:14
  80:2

kill   11:16

kind   27:5
  33:10,20
  38:21
  41:14 43:2
  45:10 57:9

knew   11:19

knowledge
  67:21 68:8
  77:2

KSR   67:20
  68:7


                L

labeling
  56:14

laid   57:8

Larry   6:20

late   49:2
  67:7

latest   32:8

law   6:21,24
  19:14
  29:9,21
  43:20
  66:25
  76:17

lawyer-created
  39:10

lawyers
  43:21

lead   8:5
  31:13

leave   27:24
  28:25

leaves   48:20

left   39:14,
  21 44:1,3
  49:25
  59:24 73:7
  74:17 77:8

legitimate
  12:15

Leibowitz
  58:11
  62:19,22
  63:3,7,11
  64:10,25
  69:1 70:21
  71:1 73:7,
  18 74:20
  77:12,23
  79:17

Leibowitz's
  74:18
  77:15

length  60:10

lengthen
  23:12,16

lengthy
  28:14 76:6
  79:9

letter  51:8
  62:18

letters
  51:21

letting  77:1

level  68:14

light  59:11

Limine  39:21
  48:5,8,22
  49:1,
  57:25
  58:3,7
  59:19
  62:22
  80:14

limit  66:9
  75:17

Limitations
  26:6

limited  13:1
  36:12
  69:23
  70:10
  83:14

limits  24:19
  26:5,6

lines  79:14

list  6:13,
  16 10:17,
  18,21 11:4
  38:1,4
  40:2,8
  41:22
  42:1,4,16,
  18,21
  43:12,24
  45:7,9
  46:7 48:19
  61:10

listed  14:2
  61:6 63:10

listening
  23:15

lists  10:13,
  14,20
  60:7,11

literally
  60:2

live  35:22

74:23

local  42:14

logistical
  16:21
  82:22

long  18:19
  26:24
  36:16,19
  41:17
  45:13 57:6
  81:10

longer  22:20
  23:9 29:3

looked  9:18
  77:16

lot  11:20
  12:19,23
  14:9 18:22
  20:20
  23:14,15
  27:8, 30:9
  34:20
  35:15
  45:25
  60:10 79:1
  81:23
  83:16,23

love  25:24

lunch  22:18,
  20,22 23:3

Lyn  8:10

M

made  43:5
  52:9 56:14
  59:17
  60:20 61:8
  63:25

main  28:16
  66:20 67:2

maintain
  20:24

make  7:12
  13:19
  16:7,11
  19:19
  24:21
  27:2,21
  28:3 32:1
  64:8 74:20
  78:19
  81:24

makes  20:19
  54:14,18

making  16:25
  67:17

mandating
  47:17

marked  16:8
  33:18

math  61:23
  75:11

matters
  39:25
  48:4,9

81:5 82:14
83:5

**Mccann**   7:7,
 10,14

**Mcdevitt**
 6:19,20
 7:1,6,11
 11:2,7,11,
 18 13:9
 14:23
 15:10,24
 16:2,22
 17:1,5,10,
 23 18:13
 19:2,7
 21:13,20
 22:24 23:2
 24:5,13,16
 25:3,6
 26:22
 27:12
 28:10,13,
 21 29:5,12
 30:13
 31:22,25
 32:18,25
 33:9,25
 34:4 35:21
 36:22,24
 37:9,15
 39:6,18
 40:4,7,21
 41:19
 42:25
 45:14
 46:2,12,18
 47:4,10,23

48:3,11,
 14,24
 82:13 83:3
 84:4

**means**   58:20

**meet**   31:19

**memory**   71:5

**mention**   42:8

**mentioned**
 34:16
 61:20 67:9

**merits**   83:7

**met**   64:17

**method**   53:12
 56:9

**mic**   15:20

**mid**   37:12

**middle**   9:1
 22:15

**mind**   30:10
 33:5

**mindful**
 25:18

**mine**   40:9

**minimum**
 72:20

**minute**   11:9
 18:17
 46:19

**minutes**   16:6
 27:11,16
 28:2 29:1

78:5

**missed**   67:25
 68:1 74:6

**mode**   81:2,3

**Molino**   7:20

**moment**   15:17

**Monday**
 23:18,20
 32:10,12
 47:2 49:16
 55:12,14

**monitor**
 40:14 41:9

**monitors**
 40:12,19
 41:6,13

**month**   31:19

**months**   50:24
 51:11 52:1
 67:7

**mooted**   70:22

**morning**   6:1,
 2 7:5,17,
 23 8:3,7,
 9,10,
 22:16
 49:2,16,21

**motion**   39:21
 48:5,8,20
 49:3,6,13,
 25 55:7,11
 56:24
 57:25
 58:3,4,7

59:18 61:6
 62:21
 63:2,10
 65:3,20
 68:12,22,
 25 70:22
 83:11

**Motions**
 48:21,25
 80:14

**move**   35:24
 37:11
 46:10

**moving**   81:2

**multiple**
 33:10 59:8

───────────

N
───────────

**names**   6:18
 8:24

**narrow**   53:12
 56:9 60:12

**narrowed**
 59:20
 60:13

**natural**   79:7

**naturally**
 13:11

**nature**   84:3

**necessarily**
 42:19

**nobody's**
 45:25

nodding
  20:17

nods   49:11
  81:3,9

nondiscoverable
  53:4

nonissue
  71:10

notebook
  16:19 17:2

noted   38:22

notice   9:21
  31:3 32:16
  38:11
  62:13 70:1

notion   75:7

November   9:1
  82:10

number   14:15
  20:2,7
  43:9
  44:14,15
  66:8

numbered
  16:15 17:3

numbering
  16:9

numbers
  16:20
  20:10 45:3

—————————
        O
—————————

object   42:19
  53:25 69:9

objection
  38:12,21
  60:23 69:7

objections
  33:2 37:20
  38:6,16,18
  39:4 80:16

obligations
  72:14
  83:24

obstructive
  40:16

obvious
  62:7,21

obviousness
  58:9,25
  59:7 60:16
  61:3,19
  62:24
  64:2,7
  66:5,6
  67:19
  69:5,9
  70:23
  71:2,8

occur   45:10

October
  10:8,20
  37:12 42:1
  83:18

offer   13:5,
  12

offered   16:8

office   8:14

officers
  43:6

ongoing
  50:8,20

open   9:9,18
  12:14
  27:24
  28:6,25
  33:19
  45:15

opening
  26:25
  27:3,5,6
  39:11
  46:21 47:8

opine   67:11,
  14 78:9

opinion
  57:15 61:2
  62:4,21,25
  63:20
  64:14
  65:23
  71:16
  72:13 73:1
  74:11,18
  78:16
  79:23

opinions
  59:15
  66:16,22

70:23
  71:3,9
  72:4 73:18
  75:2 78:13

oppose   66:3

option   28:5,
  6

order   9:7
  10:13,15
  11:20
  16:10
  56:19 81:4

organized
  6:12

original
  13:3
  19:11,12

Osteen   8:13,
  20

outright
  42:19

outset   18:9
  52:6

owner   56:5

—————————
        P
—————————

package
  50:15
  51:19

pages   11:14,
  15 12:17
  66:6 71:12
  72:8,9
  74:1,4

76:20

**paper** 11:24
  17:20
  18:22
  34:19
  35:6,13
  38:4,13

**pared** 12:3

**part** 13:10
  25:8 79:14
  81:6

**participants**
  83:15

**parties**
  12:19
  31:18
  41:21,22,
  25 42:4,20
  43:2
  60:19,25
  69:17
  70:12
  78:25
  79:11
  82:13

**parties'**
  35:9 60:11

**partner** 7:11

**partners**
  7:14

**parts** 34:1
  36:20
  81:24

**party** 26:7

69:24 70:1

**past** 40:16

**patent** 9:18
  54:20 56:4
  58:13,15,
  23 59:2
  65:8,9
  71:18 76:1
  78:2
  79:16,24

**patent's**
  64:7

**patents**
  53:13
  58:20 59:9
  79:5

**patience** 9:3

**Paul** 7:20

**peck** 73:25

**people** 8:24
  18:3
  26:13,14
  33:7 38:8
  41:7,18
  44:1 47:15
  83:16

**perfect**
  27:17

**person**
  20:14,16
  57:10
  67:22,23

**person's**
  26:18

45:7,9

**perspective**
  16:23

**phone** 82:18

**physical**
  13:6

**pick** 34:1
  64:4 73:6
  75:21

**pieces** 60:7

**Pierce** 7:19

**place** 9:7

**plaintiff**
  11:11
  21:21,24
  67:4,11

**plaintiffs**
  6:14,22,
  20:24
  21:11
  28:10
  34:18
  47:19
  55:24
  67:16 70:9
  79:2

**plaintiffs'**
  14:1,7
  17:10,11
  33:9 40:2
  49:6 58:4
  65:2 68:25
  77:13

**plan** 17:2

18:14 29:1
36:22

**planning**
  17:14
  19:15

**play** 33:12
  34:6

**played** 35:12

**point** 27:25
  57:2 63:6
  67:18
  73:21
  76:7,12
  78:19

**pointed**
  76:16

**points** 59:23
  60:1 73:22

**portion**
  34:14
  64:24

**portions**
  33:13 34:6
  79:7,9

**position**
  52:24 53:3
  54:6

**positions**
  28:16

**possibly**
  17:18
  22:25 77:5
  82:20

post  70:2

post-trial
  27:20
  29:6,22
  70:2,17

practice
  43:20

practices
  7:6

pre-  70:2,
  16

preclude
  65:21 66:1
  67:17
  68:12

precluded
  69:17
  70:13

prefer
  22:21,24
  23:16 28:5
  30:8 33:16
  35:5,10
  41:13

preference
  22:17
  40:10,23
  41:15

prejudice
  66:19
  80:21

prenumbered
  19:25

preparation

81:18

prepare
  29:19

prepared
  29:16
  32:20
  42:17

preparing
  50:19

present
  38:4,13
  75:5

presenting
  34:19

pressure
  25:18

presumptively
  25:14

pretrial
  80:20

pretty  9:22
  24:23
  26:13
  30:18
  37:12
  42:17,18
  51:23
  52:4,24
  57:12,
  69:20

prevent
  36:15

primary
  65:7,8

prior  50:4
  58:19,21
  59:1,3
  60:7 66:8,
  10 67:19
  68:11,20
  69:5,15
  70:4,14
  79:1,12

problem
  11:1,3
  14:16
  16:24 20:3
  36:10
  44:5,8,
  45:22 65:2
  66:13 84:3

problems
  12:21,24
  23:12

procedure
  42:11

proceed
  55:10

process
  50:8,21
  53:22
  55:23
  60:12 76:8

produced
  51:12,24
  52:4

production
  48:6

productions

50:22

productive
  49:14

productively
  80:24

professional
  45:20

progress
  59:17
  63:25

progresses
  13:11

projector
  40:11,17

projectors
  41:14

promptly
  50:25

proof  20:22,
  25 60:4

proper  63:19

properly
  17:3 70:11

propose
  30:4,
  33:21

proposed
  29:8,20

proposing
  12:20
  41:24

protective
  9:7 56:19

prove  21:2
  58:17
  59:13

provide  11:5
  37:3,  45:5
  56:11 67:5

provided
  51:1

providing
  10:22
  12:13
  14:7,11

proving  21:8

provisions
  56:21

prudent  14:7

public  9:14

publication
  73:21

purposes
  79:3,23

put  15:15
  20:7
  21:15,16
  22:3 24:19
  25:17
  31:14 36:8
  40:13,19
  41:8
  49:15,17
  51:15
  55:17
  76:19 79:1
  81:10

putting
  20:15
  25:11
  32:13 68:6

―――――――――
           Q

qualifications
  67:6

question
  15:20 25:3

questions
  64:18

quickly  50:3

―――――――――
           R

raise  60:23
  61:18 63:5
  80:15,21

raised  58:9
  62:5,11
  78:4 80:8

Rakoczy  7:20

Raleigh  8:4

rational
  66:24

rationale
  13:10

reached  10:1

read  24:19
  33:18,19
  34:8
  35:11,14
  36:4,9,18

38:17
  49:24 73:8
  74:16

reading
  15:12

ready  12:11
  49:9

real  27:3

reality
  38:14
  43:25

realized
  12:16

reason  20:5
  45:10
  68:21 74:9

reasonable
  44:16,19
  45:24

rebut  21:17
  22:1,2,8

rebuttal
  22:7 73:5

recall  6:14
  56:3

receive
  36:18

receiving
  83:2

recent  52:14
  53:15
  69:19

recognize
  43:10

recollection
  77:22

reconsidering
  12:14

record  15:18
  33:20 34:9
  35:14

recorded
  34:24

records
  16:9,11

reference
  58:19,21
  59:1,3,6,
  13 61:18
  62:14
  63:9,13,
  16,18,21,
  22 64:4,6,
  11 65:16,
  18 67:15
  71:21
  72:1,3,8,
  18 73:2,7,
  8 74:3,12
  75:22,23
  77:15,17
  78:1,9
  79:15

references
  59:8,10
  60:3,8
  61:12,14,
  22 62:1,5,

16 63:10
65:7,8,22
66:1,8,10,
15,23
67:12,20
68:11,13,
20 69:15,
18,22,25
71:15
72:6,23
73:19,23
74:15,23
75:4,5,13,
20 76:15
77:7 78:14
79:1,13,18

**referred**
63:14
64:11

**referring**
62:5

**regular**   47:7

**regulatory**
53:22

**rehash**   28:16

**relate**   60:3

**relevant**
18:18
51:4,7,14,
25 52:18
53:1,9,11
54:12,16,
19

**relies**   69:24

**rely**   25:2
61:14
63:11
66:20 70:3
79:25

**relying**
45:19
65:22 66:1
69:18
70:14,19
73:23
74:2,7
79:20

**remained**
54:17

**remind**   6:17

**reminder**
9:12

**render**   64:7
76:1 79:5,
15

**rendering**
79:24

**repeat**   80:3

**repeated**
17:7

**repeatedly**
15:22

**repetitive**
36:2

**reply**   49:5
55:13

**report**   60:16
61:8,13,

19,22
62:6,14
63:15,18,
23 64:5,6,
9,12 66:4,
5,11,23
67:1,7,13,
16 71:6,
10,12
75:1,18
77:8

**reporter**
9:10

**reports**
68:17
69:16
70:11

**represent**
6:21,24
14:25

**representations**
70:4

**representative**
66:12 75:2

**require**
32:7,14
37:10

**required**
58:17
59:12

**requirement**
42:22

**requires**
32:21 68:7
76:18

83:10

**requiring**
10:13 62:3

**reserve**
75:24

**reserving**
61:13

**resist**   43:1

**resolve**
41:20
56:24 57:3

**respect**
20:25
53:2,3
62:19
70:23 72:4
74:19,25
77:14
78:13

**respond**
22:11
30:1,19
49:18 54:8
69:4 70:25
76:12
83:11

**responded**
49:7

**responding**
62:20

**response**
39:22 46:8
51:2,8,22
55:12

59:18,21
60:17
61:11
63:1,2
74:20
80:25

responses
  51:17
  69:12,25

responsive
  45:8 51:4,
  25 52:17
  53:2

reverse
  62:20

review  43:18

reviews
  50:10

revised
  29:11,20

Richardson
  6:24 7:15

Richmond
  83:18

rigorous
  26:5

rises  58:14

roadmap
  27:15

roughly
  26:19,
  61:21 82:4

rule  14:2

32:21
34:15
35:23
37:14,25
38:17
42:16
46:10 54:5
55:14
62:2,3,18
64:14 67:5
68:16
72:15,17
74:9 76:18
79:23

rules  10:6
  42:14
  43:23

ruling  80:20

run  23:11

─────────
        S
─────────

Sanders
  41:10
  82:25 84:1

Sandoz  8:8
  50:25
  64:23
  70:13

satisfied
  72:14

Saturday
  47:20

save  10:10
  14:9 39:3

schedule
  23:20
  39:15

scheduling
  81:4

screen
  40:11,13,
  14,17 41:1

screens
  18:25

sealed  9:6

secondary
  22:9

seconds  69:3

section
  58:15 64:2
  66:11
  69:12

sections
  33:18

seek  38:13

seeking
  65:21 66:9
  68:12

seeks  65:3

selective
  35:20

send  12:7
  83:1

sense  42:3
  74:21

sensing  45:6

sentence
  72:21

sentencings
  83:20

served  67:6
  69:13

set  30:5,16
  65:3 66:4

sets  11:5

settle  39:20
  82:5,7

settlement
  39:15

seven-hour
  71:3

share  13:25

she'll  84:1

Sherman
  58:10
  61:8,11
  62:9 67:14
  68:10,23
  74:25 75:5
  76:6,9

Sherman's
  60:15 61:2
  64:1,24
  65:9 66:5,
  16 68:19

short  22:15
  30:18
  55:22

shorter

22:22 23:3

show 65:19

showing
19:15
44:20
68:14

shown 76:18

side 16:4
25:10,16
30:2 33:9
37:2 44:8,
18 46:23
49:24
61:2,3
63:8 82:19

side's 26:11
30:1,19

sides 18:16
25:18,23
34:13,19

sight 40:16

significantly
12:4

simple 51:23
52:24
53:11
71:20,23
72:5

simpler
20:20

simply 62:4
75:21,24

Singer 6:23
7:15 40:7

48:3
49:11,17,
20 50:2
52:20 53:6
54:8,11
55:9,15,23
56:6,11
57:3,19
58:1,6
70:8 73:6,
14 78:19,
22 80:4

Singer's
69:4,8

single
58:18,21
59:1 75:9,
15 76:19,
21

sir 82:12

sit 80:4

sitting
35:23

skill 67:21
68:8,14

skipping
20:10

Smith 8:4

so-called
60:6

sole 77:13
78:15

solve 56:22

somebody's
44:6

sooner 49:21

sort 17:19
25:25 27:3
28:16
35:17 40:9
41:24
50:10,11
59:14 70:9

sounds 18:21
24:18,22
26:9,20
27:12,17
29:4 39:3
47:24 55:7

south 25:1
26:4

speak 40:4
51:3

speaking 7:2
9:17 70:18

specific
30:5 61:6
62:10 64:8

specifically
45:22
61:20

specifics
61:7

spend 36:13

spirit 62:18

split 25:25
26:3

spoke 52:16

spot 63:6

stand 23:7
31:15 76:9

standard
82:2

stands 77:4

start 12:9
16:17
22:13
25:25 26:5
47:1 60:15
80:17

started 9:24
71:2

starting
71:13 80:3

starts 10:9
13:4 32:10
44:20 45:2
49:16
55:20
82:15
83:21

statement
27:3,6
47:8 69:6,
12

statements
26:25 28:8
46:21

stay 23:9

stenographically
34:25

Steve  8:13

sticker
  16:15 20:7

stipulate
  10:4

stipulated
  21:6

stipulations
  10:3

stop  22:18,
  22 44:16
  82:8

stopwatch
  25:12

straight  9:1

straightforward
  50:2 52:4

strategy
  14:4 31:12
  34:17

strenuously
  53:25 69:9

strong  22:19

strongly
  41:13

stuff  36:1,2
  51:23 53:8
  57:13
  60:10

submission
  52:8

submit
  29:11,20

33:22
  77:20

submitting
  33:8

sufficient
  43:22
  61:15
  62:8,17

suggest
  22:13
  27:14
  29:23

suggested
  6:13 17:21
  26:4

suggesting
  6:15

suggestion
  13:23 14:7
  69:10

summaries
  47:13

summary  70:7

Sunday  47:19

supplement
  41:22,25
  42:20
  44:11
  50:21

supplementation
  42:15

supplementing
  43:24 44:6

supply  27:14

support  23:2
  60:9 62:7
  66:2 67:1
  70:4,19
  72:23

supports
  78:16

supposed
  45:4 75:3

surprise
  66:18 72:3

surprised
  43:16 77:6

suspect
  53:19

synthesize
  28:15

―――――――――
         T
―――――――――

tabbed  17:3

tables  40:20

talk  6:15
  32:4 39:21
  40:1 46:22
  48:7 56:25
  73:11,14
  82:25 84:1

talking  9:11
  14:22
  35:18 40:8
  46:6 47:12
  59:3 68:1
  75:19

76:22

talks  72:23,
  24 73:12
  77:6

targeted
  35:3

teach  79:12

technology
  54:20 79:4

telephone
  83:14

telling
  10:15

template
  25:16

ten  20:2
  44:18,19
  45:3 50:24
  51:11 52:1

tend  25:20

tentatively
  14:2

terms  9:23
  57:7

testify
  80:22

testifying
  80:17

testimony
  22:10 71:1
  80:16

Tharrington
  8:4

thereto
  51:22

thermostats
  6:5

thing  9:10
  37:7 41:3
  49:24 50:7
  55:22
  60:19
  68:2,5
  70:24
  72:2,12
  74:15
  79:11

things  6:13
  10:25
  13:16 15:4
  23:25 24:9
  25:1,9
  26:4,6,12
  30:10
  37:1,11
  41:5,19
  50:14
  75:25
  80:13,17
  81:23

thinking
  9:25 26:23
  27:10

thinks  46:16

Thomas  7:3,5

thought  12:5
  16:22
  25:11 28:2
  31:25

33:15

thoughts
  42:10
  68:19

thousand
  11:13 14:3
  15:8 43:4

thousands
  61:25
  75:11

thread  71:20

till  45:16
  49:15

time  10:1,
  10 11:8,13
  12:1,2
  16:16
  17:24
  22:2,25
  23:12,14,
  18,24
  24:19
  25:16,24
  26:3,6,8,
  10,17,18
  27:9 29:25
  30:1,9,16
  31:13
  34:20
  35:15
  36:4,12,
  13,16 39:3
  43:13,18
  45:13,
  55:18
  68:9,15

77:3
  83:12,22

timing  25:8
  46:22

timingwise
  25:10

titled  66:11

today  6:16
  7:2 8:17
  9:5,12
  43:7 49:9,
  15 80:24

told  51:25
  53:10 55:5

Tom  8:7

tomorrow
  31:9

top  38:2

total  11:14

touch  56:8

touches  56:4

transcript
  33:17
  35:11

transcripts
  35:1,7

trees  11:17
  14:9

trial  8:12,
  21 9:13,24
  10:9 12:2
  14:4 15:8
  16:7 19:3

20:6 22:25
  25:13,14,
  22 28:1,14
  29:18
  30:6,7,16
  31:11
  32:10
  34:2,17,22
  38:14
  42:18,21
  45:16 47:1
  49:16,21
  50:19
  55:20
  60:21,22
  63:4 64:3
  66:18 70:1
  75:6 76:4,
  16,25
  78:6,25
  80:9,21
  81:2
  82:10,15
  83:21

trouble
  15:12

true  62:16

Tuesday
  23:22
  27:23

turn  6:7
  71:5

turning
  44:11

turns  15:20

tying   14:5

typically
  54:13,24

_____

_____ U _____

U.S.C.   58:15

Um-hum   15:25
  37:8

underlie
  65:22

understand
  16:21
  20:20
  45:11
  59:22
  81:20

understandably
  26:16

understanding
  13:16
  42:14
  77:13

understood
  63:11

undisputed
  10:4

unfair   62:8
  76:14,17

unfairly
  53:23

unfeasible
  75:9  76:23

universe
  70:10

University
  7:8

unnecessary
  43:2

unreasonable
  45:2

unwilling
  18:3

_____

_____ V _____

valid   76:2

validity
  53:13
  54:18,19
  56:4  58:13
  60:4,9
  64:15  78:1

Van   6:20

versus   67:2,
  4,10

video   36:9

videotape
  35:12

videotapes
  35:9

view   25:7,
  13  33:14
  46:3

viewed   52:8

views   40:17

violates
  62:17

violation
  68:16

virtue   71:7

volume   12:13

voluntarily
  37:3,5,16

_____

_____ W _____

wade   36:1

wait   18:16

waiting
  44:10

wanted   10:17
  38:10
  40:1,22
  42:8  67:11
  76:21

warrant
  78:7,8

watch   7:12

ways   18:7
  33:21

weave   59:25

week   6:7
  8:21  10:8
  23:19,22,
  24  24:7
  30:19
  33:2,3
  57:14
  83:18,21

weeks   30:12,
  18  52:13
  82:4

whatsoever
  78:9

whichever
  34:9

Whit   67:2,
  10

Winkle   6:20

wisdom   42:10

witnesses
  27:4,10
  31:1,8,14
  32:3,11
  34:14,20
  38:3,4,5
  70:3,18
  80:22

woefully
  64:2

Wonderful
  19:23  39:8

wondering
  11:18,25
  12:13

Woodward
  64:11  74:3
  77:14

word   58:19
  75:9  77:11

work   13:13,
  19  18:7
  23:9,19

     25:21
     38:24
     41:7,11
     44:25
     45:23
     46:15
     47:18
     57:21,23
     83:22
**worked**  40:15
  81:5

**working**
  20:13
  36:24 43:3
  44:2 45:12
  82:8 83:22

**works**  30:3
  49:21

**write**  57:6
  81:13

──────────────
──────────────
          **Y**
──────────────

**year**  12:18
  15:14

**years**  56:1

**yesterday**
  49:2

──────────────
          **Z**
──────────────

**zone**  59:19