IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ALLERGAN, INC. and DUKE UNIVERSITY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | 1:10-CV-681 |
| v. | ) | |
| | ) | |
| APOTEX INC., ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| ALLERGAN, INC. and DUKE UNIVERSITY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | 1:11-CV-298 |
| v. | ) | |
| | ) | |
| SANDOZ, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| ALLERGAN, INC. and DUKE UNIVERSITY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 1:11-CV-650 |
| | ) | |
| HI-TECH PHARMACAL CO., INC., ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| ALLERGAN, INC. and DUKE UNIVERSITY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 1:12-CV-321 |
| | ) | |
| WATSON PHARMACEUTICALS, INC., ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, District Judge.

These matters come before the Court on Plaintiffs' motions for permanent injunction,[1] (No. 1:10-CV-681, Doc. 211; No. 1:12-CV-321, Doc. 58),[2] and related motions. Because the Court finds that Plaintiffs will suffer irreparable injury, the remedies at law are inadequate to compensate the injury, the balance of hardships weighs in Plaintiffs' favor, and the public interest would not be disserved by a permanent injunction, the Court will grant the motions.

**Background**

Plaintiffs initiated these lawsuits pursuant to 35 U.S.C. § 271(e)(2), alleging that Defendants infringed two of their patents (the '029 and the '404) by filing Abbreviated New Drug Applications ("ANDAs") with the Food and Drug Administration, seeking to make and sell generic versions of Plaintiffs' eyelash-growth drug Latisse®. In a January 24, 2013, Memorandum Opinion and Order, this Court found Defendants liable for infringement and concluded that Defendants had not proven their invalidity defenses. *Allergan, Inc. v. Apotex, Inc.*, Nos. 1:10-CV-681, 1:11-CV-298, 1:11-CV-650, 2013 WL 286251 (M.D.N.C. Jan. 24, 2013). The Court ordered that the effective date of approval of each of Defendants' ANDAs be a date which is not earlier than the expiration dates of the patents at issue. *Id.* at *13. The Court entered judgments in favor of the plaintiffs on January 25, 2013, and February 4, 2013. (Doc. 209; No. 12-cv-321, Doc. 56.)

---

[1] Case numbers 1:10-CV-681, 1:11-CV-298, and 1:11-CV-650 were consolidated for trial. (No. 1:10-CV-681, Doc. 61.) In case number 1:12-CV-321, the issues relating to the patents at issue in the consolidated cases were severed, (No. 1:12-CV-321, Doc. 44), and the parties agreed to be bound by the Court's judgment in the consolidated cases. (No. 1:12-CV-321, Docs. 48, 56.) Plaintiffs seek injunctions in both cases.

[2] Unless otherwise noted, citations to the docket hereinafter refer to that of the lead of the consolidated cases, No. 1:10-CV-681.

## Analysis

I.  **Procedural Concerns**

As an initial matter, Defendants express several procedural concerns with Plaintiffs' motions. Defendants contend that the motions violate their procedural due process rights because they have not been given an opportunity to confront and cross-examine the witnesses whose affidavits Plaintiffs filed in support of their motions. Further, Defendants contend that the requested injunctions would violate Federal Rule of Civil Procedure 52(a)(1) because the Court did not make findings of fact or conclusions of law concerning a permanent injunction in its January 24 Order. Finally, Defendants contend that Plaintiffs' motions constitute an improper attempt to belatedly bifurcate the injunction remedy from Plaintiffs' other claims and that Plaintiffs waived the request for an injunction in their complaints by not raising it in any other pleadings.

First, the Court will address Defendants' waiver contention. It is true that Plaintiffs never raised the issue of permanent injunctive relief against Defendants at the final pretrial conference or during trial, nor did Plaintiffs present any proposed findings of fact or conclusions of law supporting a permanent injunction. However, Plaintiffs explicitly requested a permanent injunction in the complaints. (Doc. 1 at 11; No. 1:11-CV-298, Doc. 1 at 10; No. 1:11-CV-650, Doc. 1 at 9; No. 1:12-CV-321, Doc. 1 at 22-23.) Moreover, Plaintiffs stated in their pre-trial brief that "the Court should enjoin the sale of Defendants' proposed ANDA products," (Doc. 135 at 10), and they explicitly referenced the potential for a motion for a permanent injunction in their post-trial brief. (Doc. 193 at 63.)

Injunctions are routinely granted in Hatch-Waxman cases, and it is not unusual for the prevailing party to file a motion seeking a permanent injunction after an order is entered

3

upholding the patent. *See, e.g.*, *Mytee Prods., Inc. v. Harris Research, Inc.*, 439 F. App'x 882, 884, 888 (Fed. Cir. 2011) (affirming grant of permanent injunction where plaintiff moved for injunction after infringement and validity determinations); *Ortho-McNeil Pharm., Inc. v. Mylan Labs. Inc.*, Nos. 04-1689+, 2007 WL 869545, at *1 (D.N.J. Mar. 20, 2007) (granting permanent injunction as part of final judgment following infringement and validity findings), *aff'd*, 520 F.3d 1358 (Fed. Cir. 2008); *AstraZeneca AB v. Mutual Pharm. Co.*, No. Civ.A. 00-4731, 2003 WL 22794868, at *1, 3 (E.D. Pa. Nov. 12, 2003) (granting permanent injunction and concluding that previous order deciding liability was not final). Nowhere in the extensive briefing on this motion have Defendants identified any evidence relevant to the permanent injunction that they would have produced at trial but did not or otherwise shown any prejudice from the timing of this motion.

There are many cases outside of the Hatch-Waxman context acknowledging the rule that failure to raise a request for injunctive relief does constitute a waiver, and the Court generally agrees with those cases.[3] However, the rule is not applied in a mechanistic way. *See Tony's Taps, LLC v. PS Enters., Inc.*, No. 08-CV-01119-MSK-KLM, 2012 WL 1059956, at *2-4 (D. Colo. Mar. 29, 2012) (finding waiver was not intentional and reaching the merits of the request

---

[3] *See Alexander v. Riga*, 208 F.3d 419, 434 (3d Cir. 2000) (prayer for permanent injunction in complaint waived by the failure to raise the claim prior to the conclusion of trial); *Imperial v. Suburban Hosp. Ass'n*, 37 F.3d 1026, 1031 (4th Cir. 1994) (prayer for injunctive relief in complaint abandoned where relief was never pursued in district court); *Cache La Poudre Feeds, LLC v. Land O' Lakes, Inc.*, No. 04-cv-329-WYD-CBS, 2008 WL 269451, at *6 (D. Colo. Jan. 29, 2008) (prayer for injunctive relief in complaint waived where there was no mention of the claim in pretrial order or at trial); *Carpet Group Int'l v. Oriental Rug Imps. Ass'n*, No. Civ.A.95-5574 (JAG), 2005 WL 3988699, at *8-9 (D.N.J. Jan. 28, 2005) (same), *aff'd*, 173 F. App'x 178 (3d Cir. 2006); *Florida v. Elsberry*, No. TCA 84-7023-MMP, 1985 WL 6278, at *2-3 (N.D. Fla. Nov. 26, 1985) (same). Indeed, the Fourth Circuit has expressly held that "[f]ailure to identify a legal issue worthy of trial in the pretrial conference or pretrial order waives the party's right to have that issue tried." *McLean Contracting Co. v. Waterman Steamship Corp.*, 277 F.3d 477, 480 (4th Cir. 2002); *accord Gregory v. Shelby Cnty.*, 220 F.3d 433, 442-43 (6th Cir. 2000).

4

for injunction when plaintiff consistently referenced injunctive relief before trial but did not file motion for two weeks after verdict). In the particular circumstances of this case, where Plaintiffs explicitly asked for a permanent injunction in the complaint and referenced the request at least twice before the Court's decision on the merits, and in the specific context of a Hatch-Waxman claim, the Court will not find a waiver.

Next, Defendants challenge the affidavits Plaintiffs filed in support of the motions for permanent injunction. Plaintiffs did not attempt to introduce this evidence at trial, nor did they seek bifurcation of the injunction issue from their other claims or ever indicate that they expected there to be a second evidentiary phase if they won on the merits.[4] They have offered no reason why they could not have presented this evidence at trial. Plaintiffs essentially seek to "introduce evidence that was available at trial but was not proffered." *See Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1219 (5th Cir. 1986) (upholding district court's rejection of Federal Rule of Civil Procedure 52(b) motion). Accordingly, the Court will strike the affidavits as well as the deposition excerpts filed in support of Plaintiffs' motions.

Finally, the defendants contend that the Court cannot enter a permanent injunction because it has already entered a final judgment. However, the Court's January 24 order did not discuss the request for injunctive relief and the January 25 judgment did not deal with the

---

[4] In their supplemental brief, Plaintiffs cite three cases in which other district courts considered out-of-court declarations filed in support of motions for permanent injunctions. *See Brocade Commc'ns. Sys., Inc. v. A10 Networks, Inc.*, No. C 10-3428 PSG, 2013 WL 890126, at *1-2 (N.D. Cal. Jan. 23, 2013); *Joyal Prods., Inc. v. Johnson Elec. N. Am., Inc.*, No. 04-5172 (JAP), 2009 WL 512156, at *11 (D.N.J. Feb. 27, 2009), *aff'd*, 335 F. App'x 48 (Fed. Cir. 2009); *Acumed LLC v. Stryker Corp.*, No. 04-CV-513-BR, 2007 WL 4180682, at *2 (D. Or. Nov. 20, 2007), *aff'd*, 551 F. 3d 1323 (Fed. Cir. 2008). The Court finds these cases distinguishable. The declarations in *Joyal* were not challenged. In the other two cases, the procedural posture was entirely different, as the motions for permanent injunction were filed on remand from the Federal Circuit following the Supreme Court's decision in *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006). Moreover, the challengers had filed their own documentary evidence, and neither court addressed the issue in the context of a post-judgment motion.

request.  Because the judgment did not address all the relief requested by the plaintiffs, it was not final.  *See* Fed. R. Civ. P. 54(c) ("Every [final judgment other than default judgment] should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings."); *Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 744 (1976) (deeming summary judgment interlocutory where district court determined petitioner's liability but did not award relief); *Robinson v. Lorillard Corp.*, 444 F.2d 791, 803 (4th Cir. 1971) (holding that there is "no question that it is the court's duty to grant whatever relief is appropriate in the case on the basis of the facts proved").

Defendants are correct that the Court is required to make findings to support the entry of an injunction.  *See* Fed. R. Civ. P. 65(d); *CPC Int'l, Inc. v. Skippy Inc.*, 214 F.3d 456, 459 (4th Cir. 2000).  There is no reason that cannot be done by separate order.

## II. Merits

The Hatch-Waxman Act explicitly authorizes several kinds of relief for a prevailing patent-holder.  35 U.S.C. § 271(e)(4).  Included are orders establishing the effective date of FDA approval of the infringing drug as "a date which is not earlier than the date of the expiration of the patent which has been infringed," *id.* § 271(e)(4)(A), and, when appropriate, injunctive relief "against an infringer to prevent the commercial manufacture, use, offer to sell, or sale within the United States or importation into the United States of an approved drug."  *Id.* § 271(e)(4)(B).  A plaintiff seeking a permanent injunction must demonstrate

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay*, 547 U.S. at 391.[5]

### A. Irreparable Injury

Defendants do not appear to dispute that they are direct competitors of Allergan and that their products would compete directly with Latisse®. *See Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1152 (Fed. Cir. 2011). At trial, Plaintiffs presented extensive evidence that, by actively causing eyelashes to grow, Latisse® fills a unique market need that no other product addresses. (*See, e.g.*, Tr. 11/5 at 94:10-16; Tr. 11/13 at 208:17-24, 253:15-22.) It is an important product for Allergan in terms of its future sales. (*See* Tr. 11/13 at 209:17-19.) If Defendants launch their generics, Allergan will lose its market share. (*Id.* at 221:1-3; 222:10-223:4 (discussing reduced sales due to illegally marketed products without FDA approval)); *see i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 861-62 (Fed. Cir. 2010), *aff'd*, ___ U.S. ___, 131 S. Ct. 2238 (2012). The launches are also likely to result in a significant loss of revenue for Allergan, especially in light of the significant amount of money Allergan has spent advertising and promoting Latisse®, the first product of its kind. (*See* Tr. 11/13 at 224:5-9.) In fact, Allergan has not yet turned a profit because of its extensive promotion of the product, and entry of generics at this point would likely mean that Allergan would not recoup those expenditures. (*See id.* at 229:2-22.).

The evidence shows and the Court has previously found that Defendants' generic ANDA products would infringe Plaintiffs' patents and that each of the defendants infringed Plaintiffs' patents by filing an ANDA. *Allergan*, 2013 WL 286251, at *13; *see* 35 U.S.C. § 271(e)(2). "Although *eBay* abolishe[d the] general rule that an injunction normally will issue when a patent

---

[5] Before the Supreme Court's ruling in *eBay*, courts applied a presumption that an injunction should issue following an adjudication of infringement in a patent case. *See, e.g.*, *Tate Access Floors, Inc. v. Maxcess Techs., Inc.*, 222 F.3d 958, 971-72 (Fed. Cir. 2000).

is found to have been valid and infringed, . . . the patentee's right to exclude . . . should not be ignored." *Robert Bosch LLC*, 659 F.3d at 1149. Plaintiffs will suffer irreparable harm if Defendants launch their generic versions of Latisse®.[6]

Defendants contend that Plaintiffs cannot be irreparably harmed because the Court's January 24 Order prohibits the FDA from approving their ANDAs until the expiration of Plaintiffs' patents; therefore, Defendants argue, they cannot put their unapproved drugs on the market. However, the Court's January 24 Order is not an adequate remedy, as it binds only the FDA, not Defendants. Congress would not have provided for both remedies if one was meant to foreclose the other. As it stands, there is nothing to prevent Defendants from entering into a licensing agreement with another company and seeking FDA approval of their technologies under the veil of that company. *See Abbott Labs. v. Apotex, Inc.*, 455 F. Supp. 2d 831, 834-35 (N.D. Ill. 2006) (holding defendant in contempt for violating injunction through a straw-company), *rev'd sub nom. Abbott Labs. v. TorPharm, Inc.*, 503 F.3d 1372 (Fed. Cir. 2007).[7]

As valid patent holders, Plaintiffs have the right to exclude Defendants and any other competitors. Defendants, however, have no right to market and sell infringing products. Any attempt to obtain FDA infringement by acting in concert with another party would constitute an

---

[6] Although Plaintiffs presented no evidence specific to Duke as a licensor, Duke is likely to lose its ability to relicense its patent as a result of a generic launch. Regardless, Allergan's satisfaction of the four *eBay* prongs is enough to secure an injunction.

[7] As both parties note, the Federal Circuit reversed the district court's contempt finding. *Abbott Labs. v. TorPharm, Inc.*, 503 F.3d at 1382-83. However, contrary to Defendants' argument, the reversal did not constitute an endorsement of the defendant's actions. Rather, the Federal Circuit merely concluded that the defendant did not act in violation of the district court's original injunction, which prohibited the defendant from making, using, selling, or offering to sell in the United States or importing into the United States the patented product. *Id.* at 1382. The injunction Plaintiffs seek here, on the other hand, would prohibit Defendants from acting in concert or participation with any other party to engage in the commercial manufacture, use, sale, or import of the products.

8

attempt "to give [Defendants] a crack at another district judge, who might, in an infringement suit . . . , conclude that it was a different, and noninfringing, product from the one [the Court] had enjoined" and "to get a favorable decision or ruling in that case before [Plaintiffs] woke up, penetrated the veil, and sought to enforce [their patents] against the new ANDA." *Abbott Labs. v. Apotex, Inc.*, 455 F. Supp. 2d at 835.

### B. Adequacy of Remedies at Law

There are no adequate remedies at law to compensate for the loss of market share and revenue and loss of the right to exclude. *See Research Found. of State Univ. of N.Y. v. Mylan Pharm. Inc.*, Nos. 09-184-LPS, 10-892-LPS, 2012 WL 1901267, at *2-3 (D. Del. May 25, 2012) (holding that damages could not compensate patent holder's loss of the right to exclude); *Pozen Inc. v. Par Pharm., Inc.*, 800 F. Supp. 2d 789, 824-25 (E.D. Tex. 2011) (holding that harm to revenue stream and market share "cannot be undone" and remedies at law were "inadequate to compensate for such consequences").

### C. Balance of Hardships

The Court finds that the balance of hardships weighs in Plaintiffs' favor. Defendants argue that an injunction would unnecessarily restrain them from using their ANDA products in a non-commercial, experimental manner. That is inaccurate. The injunctions Plaintiffs seek, and which the Court will enter, only bar Defendants from the *commercial* manufacture, use, sale, or import of the products. Defendants have not yet marketed or sold infringing products, and an injunction would maintain the status quo and would not harm Defendants, who have no right to infringe Plaintiffs' patents.

9

### D. Public Interest

Finally, the Court concludes that the public interest would not be disserved by an injunction. Because the injunction prohibits only commercial uses of the infringing products, it will not prevent Defendants from undertaking any "developmental efforts." Defendants' products have not entered the market, and Defendants have not suggested any other reason why the public interest would be disserved by an injunction.

### E. Conclusion

The Court finds that Plaintiffs have satisfied the *eBay* test and are entitled to a permanent injunction.

## III. Motion to Seal

Plaintiffs have moved to seal parts of the brief, (Doc. 212; No. 1:12-CV-321, Doc. 59), and exhibits filed in support of their motions, (Docs. 212-1 to 212-4; No. 1:12-CV-321, Doc. 59-1 to 59-3). (Doc. 210; No. 1:12-CV-321, Doc. 57.) "[T]he courts of this country recognize a general right to inspect and copy . . . judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). "The operations of the courts and the judicial conduct of judges are matters of utmost public concern," *Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829, 839 (1978), and the public's business is best done in public.

This right of public access derives from the First Amendment as well as the common law. *Va. Dep't of State Police v. Washington Post*, 386 F.3d 567, 575 (4th Cir. 2004). "While the common law presumption in favor of access attaches to all 'judicial records and documents,' the First Amendment guarantee of access has been extended only to particular judicial records and documents." *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 180 (4th Cir.1988) (internal citation omitted). The First Amendment generally protects the public's access to

documents filed in support of dispositive motions.  *See Rushford v. New Yorker Magazine*, 846 F.2d 249, 252-53 (4th Cir. 1988).  In any given case, then, some court-filed "documents fall within the common law presumption of access, while others are subject to the greater right of access provided by the First Amendment.  Still others may not qualify as 'judicial records' at all."  *United States v. Moussaoui*, 65 F. App'x 881, 889 (4th Cir. 2003) (citing *United States v. Amodeo*, 44 F.3d 141, 145–46 (2d Cir. 1995)).

"[J]udicial records" are "documents filed with the court [that] play a role in the adjudicative process, or adjudicate substantive rights."  *In re Application of United States for an Order Pursuant to 18 U.S.C. Section 2703(d)*, 707 F.3d 283, 290 (4th Cir. 2013).  Applying that definition, the Fourth Circuit recently held that motions for a court order to obtain records of stored electronic communications brought pursuant to 18 U.S.C. § 2703(d) are judicial records "because they were filed with the objective of obtaining judicial action or relief pertaining to § 2703(d) orders."  *Id.* at 291.  Conversely, the Fourth Circuit has held in an unpublished opinion that "raw fruits of discovery" filed in connection with a motion to dismiss were not judicial records because they were not considered by the court in adjudication of the motion; therefore, the court held, they are not protected by a common law right of access.  *In re Policy Mgmt. Sys. Corp.*, Nos. 94-2254, 94-2341, 67 F.3d 296 (table), 1995 WL 541623, at *3-4 (4th Cir. Sept. 13, 1995).

When a party makes a request to seal judicial records, a district court "must comply with certain substantive and procedural requirements."  *Washington Post*, 386 F.3d at 576.  Procedurally, the district court must (1) give the public notice and a reasonable opportunity to challenge the request to seal; (2) "consider less drastic alternatives to sealing"; and (3) if it decides to seal, make specific findings and state the reasons for its decision to seal over the

11

alternatives. *Id.* "As to the substance, the district court first must determine the source of the right of access with respect to each document, because only then can it accurately weigh the competing interests at stake." *Id.* (internal quotation marks and alteration omitted).

As an initial matter, the Court notes that the instant motions to seal have been publicly docketed since their filing date of February 15, 2013. (Doc. 210; No. 1:12-CV-321, Doc. 57.) Any interested party therefore has had sufficient time to seek intervention to contest any sealing order, but the docket reflects no such action. Notice was given of the April 5, 2013, hearing on all pending motions, (Doc. 221; No. 1:12-CV-321, Doc. 69), and no interested party came forward. Accordingly, the Court concludes that as to the motions at issue, the "public notice" prerequisite to entry of a sealing order has been satisfied. *See Stone*, 855 F.2d at 181 (discussing use of docketing to comply with procedural requirements for sealing).

Next, the Court must determine whether the materials at issue are judicial records. Because documents considered in support of a motion for a permanent injunction are filed with the objective of obtaining judicial action and, as such, "play a role in the adjudicative process," the Court concludes that the brief filed in support of Plaintiffs' motion is a judicial record. *See In re Application*, 707 F.3d at 290.[8] There does not appear to be a First Amendment right of access to the brief, as it was not filed in support of a dispositive motion in the traditional sense, though this is not completely clear. *See generally In re Violation of Rule 28(D)*, 635 F.3d 1352, 1356-58 (Fed. Cir. 2011) (discussing relationship between Supreme Court cases and Fed. R. Civ. P. 26 in connection with allegedly confidential information contained in briefs.) The Court will

---

[8] However, because the Court has declined to consider the documentary evidence filed in support of the motion, the Court concludes that these affidavits and deposition excerpts are not judicial records. *See In re Application*, 707 F.3d at 290-91. Therefore, there is no right of access to them, and they may remain sealed in their entirety.

12

apply the common law presumption of access, but would reach the same result if the First Amendment right of access applied.

Since the common law right of access attaches to the brief, the Court next must determine whether Plaintiffs have overcome the presumption of access. "To substantively overcome the common law presumption of access . . . , a court must find that there is a 'significant countervailing interest' in support of sealing that outweighs the public's interest in openness." *In re Application*, 707 F.3d at 293 (quoting *Under Seal v. Under Seal*, 326 F.3d 479, 486 (4th Cir. 2003)). The burden of establishing such a countervailing interest is on the party seeking to keep the material secret. *Rushford*, 846 F.2d at 253.

In evaluating whether a party has met its burden to overcome the public's right of access, the court should consider "the interests advanced by the parties in light of the public interest and the duty of the courts." *Nixon*, 435 U.S. at 602. As the *Nixon* Court noted, "access has been denied where court files might have become a vehicle for improper purposes," such as using court records to gratify private spite, to promote public scandal, or as "sources of business information that might harm a litigant's competitive standing." *Id*. at 598.

In a case involving motions and hearings in a criminal case, the Fourth Circuit held that the following factors were relevant when balancing the government's interest in secrecy and the public's right to access: "whether the records are sought for improper purposes, such as promoting public scandals or unfairly gaining a business advantage; whether release would enhance the public's understanding of an important historical event; and whether the public has already had access to the information contained in the records." *In re Knight Publ'g Co.*, 743 F.2d 231, 235 (4th Cir. 1984) (citing *Nixon*, 435 U.S. at 597-608). The Fourth Circuit has applied these same factors in a case involving criminal investigatory materials. *See In re*

13

*Application*, 707 F.3d at 293. Numerous district courts in this circuit have applied these factors in civil cases. *See, e.g.*, *Adler v. CFA Inst.*, No. 1:11-CV-1167, 2012 WL 3257822, at *1 (E.D. Va. Aug. 7, 2012); *Mitchell v. Smithfield Packing Co.*, No. 4:08-CV-182-H, 2010 WL 4877054, at *1 (E.D.N.C. Nov. 24, 2010); *Tustin v. Motorists Mut. Ins. Co.*, 668 F. Supp. 2d 755, 759 (N.D.W. Va. 2009); *Silicon Knights, Inc. v. Epic Games, Inc.*, No. 5:07-CV-275-D, 2008 WL 3914463, at *3 (E.D.N.C. Aug. 22, 2008). In the patent context, the Federal Circuit generally requires a strong showing of prejudice or harm, especially as to information introduced at trial, and finds it "generally inappropriate" for a party to mark legal argument in a brief as confidential. *In Re Violation of Rule 28(D)*, 635 F.3d at 1358, 1360.

The Court finds that the revenue information Plaintiffs seek to seal is confidential, as it is confidential and proprietary "business information that might harm [the parties'] competitive standing." *Nixon*, 435 U.S. at 598. There is no indication of any improper purpose, and the public would ordinarily not have access to this information in the absence of this litigation. The Court concludes that the public interest in accessing the information Plaintiffs seek to seal is heavily outweighed by the potential harm to the parties should this information become public. *See In re Application*, 707 F.3d at 293.

As is appropriate, Plaintiffs have proposed to submit for public filing a redacted version of their brief. The Court agrees that the redaction of this document is an appropriate less drastic alternative to sealing the brief in full. The Court sees no other alternatives that would protect the parties' proprietary information. The Court will review the redactions once the redacted brief is filed, and should they be overbroad, the Court will reconsider this Order. *See In re Violation of Rule 28(D)*, 635 F.3d at 1360 (holding that the marking of legal argument as confidential is only

14

justified if "the argument discloses facts or figures of genuine competitive or commercial significance").

It is therefore **ORDERED** that:

1. Plaintiffs' motions for permanent injunction, (Doc. 211; No. 1:12-CV-321, Doc. 58), are **GRANTED**. The Court shall enter injunctions in the consolidated cases and in case number 1:12-CV-321.

2. Defendants' motions for leave to file a sur-reply, (Doc. 223; No. 1:12-CV-321, Doc. 71), are **GRANTED**.

3. Plaintiffs' motions to seal, (Doc. 210; No. 1:12-CV-321, Doc. 57), are **GRANTED**. Plaintiffs' briefs, (Doc. 212; No. 1:12-CV-321, Doc. 59), shall remain sealed in their entirety, but Plaintiffs shall publicly file a redacted version in each case. The accompanying exhibits shall remain sealed in their entirety.

This the 23rd day of April, 2013.

 _____
 UNITED STATES DISTRICT JUDGE